WILLIAM HENRI IRISH & others, trustees in bankruptcy,
    *vs.* JOSEPH Y. SCHOONER & another.

Suffolk.    December 11, 1925. — March 30, 1926.

Present: BRALEY, PIERCE, WAIT, & SANDERSON, JJ.

*Corporation,* Dissolution, Ultra vires.    *Contract,* Implied.

A Massachusetts corporation, which was heavily indebted to a creditor
    for money advanced, was dissolved by special statute.    The creditor,
    on terms involving heavy bonuses to be paid to him, continued to do
    business with one who had been the president, treasurer, and general
    manager of the corporation and to receive notes purporting to be made
    by that corporation.    A new corporation was organized with the same
    controlling officer, which "took over and appropriated" the assets of
    the corporation which had been dissolved; but it did not appear that the
    second corporation assumed the liabilities or debts of the first.    There-
    after the creditor of the first corporation in transactions with the same
    person, as officer, took further notes purporting to be made by the first
    corporation for bonuses, payments on old loans and some cash.    Later
    he received from the second corporation moneys and notes in payment
    of the notes of the first corporation and delivered to the second cor-
    poration bonds which he was holding as security.    The second cor-
    poration having been adjudicated a bankrupt and its trustee having
    brought an action for repayment of moneys thus paid by the bankrupt
    to the creditor, it was *held,* that
        (1) The payments by the second corporation were *ultra vires* and
    amounted to a misappropriation of the moneys by its officer;
        (2) The defendant must be held to have participated in the misap-
    propriation for his own gain and profit;
        (3) The second corporation was not liable on the notes given toward
    payment of the notes purporting to have been given by the first
    corporation;
        (4) The defendant was liable to the trustee in bankruptcy of the
    second corporation for the amounts of money paid by it to him less
    the value of its bonds which he had returned to it at the time of such
    payment.

BILL IN EQUITY, filed in the Superior Court on July 21,
1922, and afterwards amended, by the trustees in bank-
ruptcy of Cox Dental Company, for a return of moneys
alleged to have been improperly paid to the defendant
Schooner by the plaintiffs' bankrupt, and to reach and ap-
ply, in payment of the obligation of the defendant Schooner

to the plaintiffs, stock owned by him in the defendant Boston Mirror Company.

In the Superior Court, the suit was referred to a master. Material findings by the master are described in the opinion. The suit afterwards was heard by *Weed,* J., by whose order there was entered an interlocutory decree overruling exceptions by both parties to the master's report and confirming the report. The judge then reported the suit to this court for determination upon the pleadings, the master's report, objections and exceptions thereto, the interlocutory decree and findings and an order for a final decree, described in the opinion.

*J. J. Kaplan,* for the plaintiffs.

*A. S. Allen,* for the defendant Schooner.

BRALEY, J. The master states that on or about December 29, 1916, one Richard C. Cox organized under the laws of this Commonwealth a corporation known as the Sterling Products Company for the purpose of manufacturing dental engines and similar products in the city of Boston. By Spec. St. 1919, c. 111, which took effect March 28, 1919, this corporation was dissolved, and on August 13, 1919, the Sterling Dental Manufacturing Company, also a domestic business corporation, was formed. The corporate name was changed May 4, 1920, to the Cox Dental Company, of which the plaintiffs on May 13, 1921, became the trustees in bankruptcy. The Sterling Dental Manufacturing Company on August 13, 1919, "absorbed or took over" the assets of the Sterling Products Company, which was insolvent, but there is no finding that any votes were passed authorizing the Sterling Dental Manufacturing Company to assume the liabilities of the Sterling Products Company, which from its incorporation was insolvent and continued in that condition until it was adjudged bankrupt. But if, under the master's general findings as to the course of business, it is assumed, that the Sterling Dental Manufacturing Company impliedly succeeded to the liabilities of the Sterling Products Company, the hiring of money from the defendant by the Sterling Products Company beginning December 19, 1918, and apparently ending August 20, 1919, nearly four months

after its dissolution, with the respective amounts stated on the face of the notes, and the bonus charged by the defendant for the accommodation, are detailed in the report. *Massachusetts National Bank* v. *Simon Manuf. Co.* 233 Mass. 85. The first note dated December 19, 1918, was typical of the transactions with the bankrupt which followed. A vote was passed by the directors, who consisted of Richard C. Cox, Julia H. Pearson, and one other director. The majority of the board was under the control and direction of Cox, who owned substantially all the stock. The vote reads as follows:

"December 19, 1918.

"A meeting of the Board of Directors of the Sterling Products Company, was held at the office of the Company at Harvard Square, Cambridge, on above date at 9.30 A.M. All of the directors of said Company having been duly notified of said meeting, and the following directors were present:

"Richard C. Cox and Julia H. Pearson. The following business was transacted at said meeting: The said Richard C. Cox proposed that it would be essential for the purpose of effectively carrying on the business of said Company and more especially for the purpose of purchasing stock in trade and other materials for a large output of dental machines, to secure a loan of thirty thousand ($30,000) dollars from one Joseph Y. Schooner of Boston, and said Richard C. Cox accordingly moved that the said loan be secured, and four (4) promissory notes each for seventy-five hundred ($7500.00) dollars be given for same.

"Motion carried.

"It was further voted that Richard C. Cox, President and Treasurer, be and hereby is authorized to give the Company's notes for the said sum so to be borrowed. There being no further business, the meeting was adjourned."

The notes, which were executed by Cox in the name of the company, bore in some instances the seal of the corporation, affixed at the defendant's request, to whom also a certified copy of the various votes was delivered.

If it be assumed, as the plaintiffs contend, that the de-

fendant constantly extorted unconscionable sums as a bonus from a necessitous borrower, the notes were not voidable for usury. *Spofford* v. *State Loan Co.* 208 Mass. 84. R. L. c. 73, § 3. G. L. c. 107, § 3.

The loans also were negotiated by Cox, who was president, treasurer and general manager of a corporation which is not shown to have had any by-laws. The master finds that in lending the money no fraud was practised by the defendant on the corporation, and, even if the bonus paid may have been improvident, Cox had authority to solicit and negotiate the loans. *Monument National Bank* v. *Globe Works*, 101 Mass. 57. *Merchants' National Bank of Gardiner* v. *Citizen's Gaslight Co. of Quincy*, 159 Mass. 505. *Beacon Trust Co.* v. *Souther*, 183 Mass. 413, 418.

The master, after reviewing the transactions with the Sterling Products Company from December 19, 1918, to and including July 14, 1919, reports, "that on August 20, 1919, the Sterling Products Company entered into a new transaction with the defendant, consisting of a series of four notes dated August 20, 1919, due respectively in one, two, three and four months, each in the sum of twenty-five thousand ($25,000) dollars. These notes and the votes under which they were issued, were identical in all respects with the notes and votes herein referred to, except as to dates and amounts as aforesaid. The defendant retained twenty-five thousand ($25,000) dollars as profit, bonus or interest on the transaction, fifty thousand ($50,000) dollars was applied to the purchase of Liberty bonds and retained by the defendant as collateral security, and twenty-five thousand ($25,000) dollars was given to the Sterling Products Company in the form of a credit on the transaction of July 14, 1919."

The transaction of July 14, 1919, is stated in these words: "I find . . . that on July 14, 1919, the defendant and the Sterling Products Company entered into a new transaction consisting of a series of four notes dated July 14, 1919, due respectively in one, two, three and four months and each in the sum of twenty thousand ($20,000) dollars. These notes and the vote under which they were issued were identical in all respects with the notes and votes of the

previous transactions, except as to dates and amounts as aforesaid, and except that said notes were not under seal. The defendant retained as bonus, profit or interest twenty thousand ($20,000) dollars, forty thousand ($40,000) dollars was applied to the purchase of Liberty bonds held by him as collateral security, and twenty thousand ($20,000) dollars was given to the Sterling Products Company in the form of a credit on the outstanding transaction of June 24, 1919."

"I find . . . that on September 24, 1919, the Sterling Dental Manufacturing Company paid to the defendant the sum of twenty-five thousand ($25,000) dollars, as follows: a check was drawn on the Federal Trust Company by the Sterling Dental Manufacturing Company, payable to the order of the Sterling Dental Manufacturing Company and indorsed in blank by the Sterling Dental Manufacturing Company. This twenty-five thousand ($25,000) dollar payment by the Sterling Dental Manufacturing Company was paid to and received by the defendant on account of the outstanding notes of the series of August 20, 1919, executed by the Sterling Products Company. There was no specific vote passed by the stockholders or directors of the Sterling Dental Manufacturing Company authorizing these payments."

It is also found, that "On said December 22, 1919, the Sterling Dental Manufacturing Company delivered to the defendant through the said Richard C. Cox four notes under the seal of the Sterling Dental Manufacturing Company, each dated December 22, 1919, and each in the sum of thirty-seven thousand and five hundred ($37,500) dollars. The notes and votes were similar in all respects to the previous note transactions, except as to the amounts and dates. The defendant retained thirty-seven thousand five hundred ($37,500) dollars as his bonus, profit or interest on the transaction, and seventy-five thousand ($75,000) dollars was to have been applied by the defendant to the purchase of Liberty bonds to be retained as collateral security for the payment of said notes. The thirty-seven thousand and five hundred ($37,500) dollar balance was applied toward the payment on the balance of seventy-two thousand

($72,000) dollars then due the defendant, and the Sterling Dental Manufacturing Company thereafter paid to the defendant checks aggregating thirty-seven thousand and five hundred ($37,500) dollars, but said checks were only made good to the extent of thirty-one thousand and four hundred and seventy-five ($31,475) dollars, leaving a balance due the defendant of three thousand and twenty-five ($3,025) dollars. The defendant on this transaction of December 22, 1919, did not purchase the seventy-five thousand ($75,000) dollars worth of Liberty bonds, and the Sterling Dental Manufacturing Company and the defendant both treated these notes as of no effect, and so treated by agreement of both parties, leaving the transaction in substance one of seventy-five thousand ($75,000) dollars, of which thirty-seven thousand and five hundred ($37,500) dollars was retained as bonus, profit or interest, on the loan.

"If material, I find . . . that the bonus payments from the nineteenth day of December, 1918, down to and including the fourteenth day of July, 1919, amounted to sixty-thousand ($60,000) dollars."

"I find . . . that at the time the Sterling Dental Manufacturing Company was adjudicated a bankrupt, it was indebted under the last note transaction on two notes of thirty-seven thousand and five hundred ($37,500) dollars each, also on unpaid checks amounting to three thousand and twenty-five ($3,025) dollars, so that the amount apparently due the defendant, unless as a matter of law the corporation was not obliged to pay same, was seventy-nine thousand and twenty-five ($79,025) dollars."

The transactions with the Sterling Products Company, entered into after that corporation had been dissolved, and the appropriation of the funds of the Cox Dental Company to satisfy any part of the loans, and the payment of September 24, 1919, although not solicited by the defendant, was beyond the power of the corporation. The property of the Cox Dental Company could not be appropriated lawfully to debts of the Sterling Products Company, contracted by the defendant with the company after its dissolution, and after the Cox Dental Company, an independent cor-

poration, had been organized and was functioning. *Oakes* v. *Hill*, 14 Pick. 442, 446. *Boston Glass Manufactory* v. *Langdon*, 24 Pick. 49, 52. *Brighton Packing Co.* v. *Butchers' Slaughtering & Melting Association*, 211 Mass. 398, 403, 404.

By means of the manipulation of the loans, a summary of which with the dates and amounts appears in the report, the master concludes that the Sterling Dental Company paid the defendant in cash between September 24, 1919, and February 3, 1920, $116,475. We do not deem it material to consider the purchase by the defendant from time to time of Liberty bonds in connection with the various loans. The bonds were finally delivered to Cox by the defendant, and, while Cox defrauded the corporation by appropriating the bonds to his own use, it is found that the defendant was ignorant of the fraud. The defendant, however, knew of the corporate existence of the Sterling Dental Manufacturing Company. He had dealt with it. He also knew that the moneys of the company had been wrongfully appropriated by the directors, the president and treasurer, in their dealings with him, and that under the law they were guilty of a breach of their fiduciary obligations. It is settled, that as against them the trustees of the bankrupt could have maintained the suit. *Putnam* v. *Handy*, 247 Mass. 406. It also can be maintained against the defendant who must be held on the record to have been a participant for his own gain and profit. *United Zinc Co.* v. *Harwood*, 216 Mass. 474, 476, and cases cited.

We find no error in the interlocutory decree overruling the exceptions of both parties and confirming the report. It is affirmed.

The measure of the plaintiffs' damages remains. We cannot say that the trial judge was plainly wrong in finding and ruling on the master's report and the reasonable inferences to be drawn therefrom, that "it was *ultra vires* the Company to pay the four notes for $25,000 each given the defendant Schooner by the Sterling Products Company; that the payment thereof by the checks and notes of the Cox Company as set forth in the master's report was a misappropriation of the Cox Company's money; that the de-

fendant received the same with notice and not in good faith; that the plaintiffs are entitled to recover from the defendant Schooner the sum of $116,475 for money received by said Schooner to said Cox Company's use less the sum of $86,000, the value of certain Liberty bonds delivered by said Schooner to the said Cox Company because of said payments; and that said Cox Company was not indebted to said Schooner at the time when it was adjudicated a bankrupt upon the two notes of $37,500 each and the $3,025 balance of an unpaid check of said Cox Company."

It follows that the plaintiffs are entitled to a final decree with costs for $30,475, with interest thereon at the rate of six per cent to be computed from July 21, 1922, the date of filing the bill, to the date of entry of the decree.

*Ordered accordingly.*