M. McDONOUGH CORP. *vs.* MICHAEL R. CONNOLLY.

Essex.    November 13, 1942. — January 26, 1943.

Present: FIELD, C.J., DONAHUE, QUA, COX, & RONAN, JJ.

*Corporation*, Corporate entity, Ultra vires. *Contract*, Validity, Implied.

One contracting with a corporation was bound at his peril to take notice of the legal limits of its capacity to agree that labor and materials furnished him by the corporation should not be paid for by him, but that the amount of the bill therefor should be credited by him on a note owed him by another corporation.

The mere facts, that two corporations had substantially the same personnel and were both controlled by a person who was their "boss" and "was the corporations," did not operate to merge their identities so as to make valid a contract that a debtor for labor and materials furnished by one of them should not pay it therefor but should credit the amount of the bill therefor upon a note of the other corporation held by him.

A corporation had no authority in the circumstances to make with one to whom it furnished labor and materials a contract that he should not pay it therefor, but that he should credit the amount of the bill therefor on a note given him by another corporation which was managed and controlled by the same officer who purported to make such contract for the first corporation and who also managed and controlled the first corporation.

One, who accepted and retained labor and materials furnished him by a corporation under an ultra vires contract, purported to have been made through its controlling officer, to the effect that there should be no payment to that corporation therefor but that the amount of the bill therefor should be credited upon a note to him of another corporation also controlled by the officer, was bound to pay the value of such labor and materials to the first corporation.

CONTRACT. Writ in the District Court of Southern Essex dated January 10, 1940.

On removal to the Superior Court, the case was tried before *Morton*, J.

*R. L. Sisk,* for the defendant.

*John S. Stone,* for the plaintiff.

Cox, J.   This is an action of contract to recover the value of labor and materials alleged to have been furnished the defendant by the plaintiff.   The case was heard by a judge of the Superior Court, sitting without jury, upon the report of an auditor, whose findings of fact were not to be final.   The trial judge allowed the plaintiff's motion for judgment on the report, and the defendant excepted.   The auditor's findings follow.

In answer to the issue which the auditor states was presented, "Were the labor and materials furnished?" he finds that the materials were delivered as set forth in the declaration, and that the price therefor was fair and reasonable. The account annexed to the declaration contains eight items, the first of which is as of April 17, 1936.   This item and the next six aggregate $144.75, and the eighth item, which is for $2,312.40, is as of August 10, 1938.   The plaintiff corporation was organized on April 4, 1936, for the purpose of carrying on a general contracting business.   One Delano was its treasurer, and one M. McDonough, hereinafter referred to as McDonough, was its manager.   At some time he became its treasurer, but on February 1, 1938, Delano was its treasurer.   The plaintiff and two other corporations, M. McDonough Co. and the Malden Crushed Stone Co. Inc., which was not organized until May, 1937, had the same office, telephone and bookkeepers.   The "personnel of all of them was the same with one exception." McDonough was the "boss" of these three corporations and, at all times, controlled them.   "He was the corporations."

Before the material was delivered, McDonough talked with the defendant about its cost, and the auditor found that the defendant purchased the material upon the understanding with McDonough that he was not to pay, but was to have the "amount" credited on his notes against the M. McDonough Co. which were indorsed by the Malden Crushed Stone Co. Inc. and McDonough.   The auditor reports, however, that McDonough denied this and said that

no talk was had about the payment for the material that was sold. Bills of the account in the name of the plaintiff were sent by it and received by the defendant. The M. McDonough Co. filed a petition in bankruptcy under "77B" in June, 1936, prior to the delivery of the material. The defendant knew of this petition and had knowledge of the "change in the corporations." He held three notes of M. McDonough Co. When this last named company went into bankruptcy, its equipment went to the plaintiff corporation, "which was immediately formed."

McDonough and the defendant dealt with each other on a "man to man" basis. "Corporations with their technicalities meant nothing to these men in their dealings with each other. . . . McDonough was always able to do as he pleased with any of the corporations . . . and . . . Connolly took McDonough on this basis." Delano, the plaintiff's treasurer, who had power to receipt for merchandise delivered "in its ordinary course," went to the defendant's office on February 1, 1938, and "receipted . . . the bill for the merchandise set forth in the declaration," and had the defendant's bookkeeper give credit accordingly on the notes of M. McDonough Co. hereinbefore referred to. Just how Delano could, on February 1, 1938, receipt for the item of $2,312.40, appearing in the declaration as of August 10, 1938, does not appear. The plaintiff suggests in its brief that the date is erroneously stated, and that it should have been given as February 1, 1939. In each month over a period of time up to November, 1935, Delano had made payments of $100 and interest and "produced each time new notes and received in return the old ones," and the stockholders of all the corporations "then in existence" knew of this practice. No payments were made after November, 1935.

The ultimate conclusion of the auditor was that "so far as Connolly and McDonough were concerned, they understood each other. Connolly was to receive the goods and credit was to be given on the notes. . . . If, as a matter of law, upon all the facts, the arrangement for payment made by Connolly and McDonough does not bind the

plaintiff corporation and does not relieve the defendant and, if the receipts made and given by Delano to . . . Connolly are not valid acts, then . . . [the auditor found] for the plaintiff on the declaration; otherwise, . . . [he found] for the defendant."

The case is prosecuted by the receiver of the plaintiff, who suggests to this court that he was appointed on May 12, 1941. The defendant raises no question as to this.

The trial judge took the auditor's report with the power to draw proper inferences from subsidiary or specific facts found, and his findings, made by way of inference, cannot be reviewed by this court. *Cook* v. *Farm Service Stores, Inc.* 301 Mass. 564, 567–568. A footnote in the *Cook* case, at page 567, refers to cases tending to show that a finding by an auditor may also be controlled by an inference to the contrary from mere evidence stated or reported by an auditor.

It could have been found that the defendant knew that, in his dealings with McDonough, he, at least, was negotiating for the purchase of material that belonged to the plaintiff. McDonough was the plaintiff's manager, and we think the inference was warranted that, in dealing with the defendant, he was acting as the plaintiff's manager and agent. The auditor evidently believed Connolly when he said that he "accepted" the material upon the agreement with McDonough as to the application of the cost. The defendant knew that the M. McDonough Co. had filed a petition in bankruptcy, and he knew that there had been a "change in the corporations." The significance of any talk that he may or may not have had with McDonough relative to the application of the cost of material becomes apparent if the material sold belonged to the plaintiff. It could have been found that Connolly dealt with the plaintiff through its manager and agent, and that an express contract, at least on its face, arose.

Connolly, in entering into this contract, was bound, at his peril, to take notice of the legal limits of the plaintiff's capacity. *Davis* v. *Old Colony Railroad*, 131 Mass. 258, 260. Corporations are distinct entities, and even where

the identity of stockholders and the control of a contracting corporation exists, this does not operate to merge the corporations into one or to make either the agent of the other. *Marsch* v. *Southern New England Railroad,* 230 Mass. 483, 497, 498. The ownership of all the stock and the absolute control of the affairs of a corporation do not make that corporation and the individual owner identical, in the absence of a fraudulent purpose in the organization of the corporation. *Berry* v. *Old South Engraving Co.* 283 Mass. 441, 451. *Albert Richards Co. Inc.* v. *Mayfair, Inc.* 287 Mass. 280, 288. *Hanson* v. *Bradley,* 298 Mass. 371, 379, 380. The case at bar is not one where the court is required to look beyond the corporate form for the purpose of defeating fraud or wrong, or for the remedying of injuries. *Hanson* v. *Bradley,* 298 Mass. 371, 381. There is no suggestion that the plaintiff was but a continuance of M. McDonough Co., either in fact or in law. See *Berry* v. *Old South Engraving Co.* 283 Mass. 441, 451.

Whether McDonough was the plaintiff's manager or treasurer, he was bound to act in good faith and with due regard to its interests. *Silversmith* v. *Sydeman,* 305 Mass. 65, 68. *Buckman* v. *Elm Hill Realty Co. of Peabody,* 312 Mass. 10, 14, 15. If he was the manager, and not the treasurer, at the time the contract was made (and we think it could have been so found), he did not have unlimited power, but was restricted to doing those things that are usual and necessary in the ordinary course of the plaintiff's business, and no greater authority can be inferred from the circumstance that he held the power of dominion over the corporation. *Stoneman* v. *Fox Film Corp.* 295 Mass. 419, 425. The powers of corporate officers, inherent or inferred, are discussed in *Kelly* v. *Citizens Finance Co. of Lowell, Inc.* 306 Mass. 531, 532–533, with an abundance of cases cited. We think that McDonough had no power to make the contract in question with the defendant. McDonough had no authority to give away property belonging to the plaintiff, and he had no power, in the circumstances, to commit the plaintiff to the assumption of the debt of another. *Lydia E. Pinkham Medicine Co.* v. *Gove,* 305 Mass. 213, 217.

Moreover, the plaintiff itself, on the permissible findings, had no authority to give away its property. *Bortner* v. *Leib*, 146 Md. 530, 537. *Holst* v. *New York Stock Exchange*, 252 App. Div. (N. Y.) 233. *Godley* v. *Crandall & Godley Co.* 212 N. Y. 121, 128. *Deutsche Presbyterische Kirche* v. *Trustees of Presbytery of Elizabeth*, 89 N. J. Eq. 242, 245–247. The plaintiff, in the circumstances, had no authority to assume, in whole or in part, any obligations, directly or indirectly, of the M. McDonough Co. or of the indorsers on its notes. *United States Fidelity & Guaranty Co.* v. *English Construction Co.* 303 Mass. 105, 114. The plaintiff received no consideration for the undertaking entered into by McDonough, and it was not in furtherance of its objects. We think that the defendant must be held to have known, when he received the materials in question under an agreement to divert payment for them by application on the note of M. McDonough Co. that such an agreement was without right. See *United Zinc Co.* v. *Harwood*, 216 Mass. 474, 476; *Irish* v. *Schooner*, 255 Mass. 359, 365; *Proctor* v. *Norris*, 285 Mass. 161, 164.

We think that the case at bar comes within the rule that when, in equity and good conscience, one has property without right that ought to go to another, he cannot retain it. In such case, the action is not on the express ultra vires contract, but on an implied contract to return or make compensation for property or money that one has no right to retain. *Rogers* v. *Holden*, 142 Mass. 196. *Walker* v. *Davis*, 1 Gray, 506, 509. See *Nowell* v. *Equitable Trust Co.* 249 Mass. 585, 601.

If it be assumed that the plaintiff could ratify McDonough's act in making the contract with the defendant, a finding of ratification was not required. The payments made by Delano prior to November, 1935, are of no significance. For all that appears, these payments were made on notes of M. McDonough Co. and, in any event, all of them were made before the plaintiff was incorporated. The auditor found that Delano had power "to receipt for" merchandise delivered by the "company" in its ordinary course. This finding is embodied in the paragraph that contains

findings with reference to Delano's payments up to November, 1935. We think the finding therein relates to Delano's power with reference to M. McDonough Co.

The circumstance that Delano receipted the bill for the material delivered by the plaintiff to the defendant, and, at the same time, caused the defendant's bookkeeper to give credit for the amount of these bills on the back of the notes of M. McDonough Co., did not require a finding of ratification or of estoppel. The contract for the sale of the merchandise was invalid, and it does not appear that Delano had any authority for what he did or caused to have done.

There was no error in the denial of the request that upon the auditor's report the finding must be for the defendant, or of the request that, upon the facts found by the auditor, there was no contract, express or implied, by the defendant to pay the plaintiff for the material, and, accordingly, that the finding must be for the defendant.

*Exceptions overruled.*