*Municipal Court of the City of Boston*

No. 338363

**HARVARD
ELECTRIC AND MACHINE CO., INC.**
**v.**
**G & K PROVISION COMPANY**
**AND**

No. 342160

**ABRAHAM GINSBERG ET AL**
**v.**
**G & K PROVISION COMPANY**

(April 27, 1955)

*Lewiton, J.* These are two actions of contract tried together to recover for *work and labor performed and materials furnished.* In each case there was a finding for the plaintiff, and the defendant claims to have been aggrieved by the denial of certain of its requests for rulings. Both cases are here on a consolidated report by the trial judge.

There was evidence of the following facts: The plaintiffs in the Ginsberg case are general contractors. The defendant, G & K Provision Company, (hereinafter sometimes referred to as "G & K"), is a corporation which conducted a place of business at

80 Blackstone Street, Boston. Late in December, 1950, Joseph Goldstein and Israel Krasnow, who were officers, directors and stockholders of G & K, told Benjamin Ginsberg, one of the plaintiffs, that G & K intended to lease premises at 2 Union Street, Boston as an additional place of business and they discussed with Ginsberg certain alterations and remodeling work which they wanted done in and about the new premises. Together they went to 2 Union Street, and as a result of their discussions and observations, it was agreed that the plaintiffs Ginsberg would do the work for the defendant on a *cost plus basis*. The plaintiffs were also to do some work separately for the landlord on or about the said premises. Goldstein and Krasnow ordered Ginsberg to proceed with the work at once and he started to work on January 15, 1951. Certain electrical work was to be done in connection with the alterations and remodeling at 2 Union Street, and Goldstein and Krasnow recommended to Ginsberg the Harvard Electric and Machine Company, Inc., (hereinafter referred to as "Harvard Electric") to do that work. Ginsberg obtained a quotation from Harvard Electric of $500 and so informed Goldstein and Krasnow, who said that would be satisfactory.

While the work was going on, about January 28 or 29, 1951, Goldstein and Krasnow discussed with Benjamin Ginsberg the question of having the work done for a fixed contract price instead of being done on a cost-plus basis as theretofore agreed. In the course of this conference, Goldstein and Krasnow told Ginsberg that they proposed to form a new corporation to be known as Adams Beef Company, Inc. (hereinafter referred to as "Adams"), and suggested that the plaintiffs make the new contract with that corporation. Ginsberg refused to go along with this suggestion and insisted that he had contracted to work for the defendant and had proceeded with the work because he knew, from past experience, that the defendant was "good for the money". There was

further talk about drawing up the new agreement in the name of Adams Beef Co., Inc., with the understanding that the defendant would nevertheless continue to be liable for the work done by the plaintiffs. While a draft on such an agreement was prepared by counsel for the plaintiffs, it was never executed.

On February 1, 1951, Adams Beef Company, Inc., was incorporated to engage in the meat business. Thereafter, it did business at 2 Union Street, Boston, which premises it occupied under a lease commencing February 1, 1951.

During January and February, 1951 Goldstein and Krasnow discussed additional electrical work to be done at the Union Street premises. A few days before February 20, 1951, at a meeting attended by Benjamin Ginsberg, Goldstein, Krasnow and Mark Freedman of Harvard Electric, Benjamin Ginsberg suggested that the electrical work be taken out of his contract and said that he would credit the defendant with $500 which he had originally carried for this work. This was agreed upon by all persons present.

On February 20, 1951, Freedman, in behalf of Harvard Electric, applied to the City of Boston for a work permit, inserting the name of "Adams Beef Co." by direction of Goldstein or Krasnow. He knew nothing of Adams Beef Company, Inc., nor did he ever know that G & K was a corporation. He had previously done work for Goldstein and Krasnow.

The plaintiffs Ginsberg performed all of the work originally contracted for, together with a number of extras which, after deducting $500 for the omitted electrical work, amounted to $6400. They received payments totaling $5200 by checks of Adams. It was not denied that the work was done or that the amounts claimed were fair and reasonable. The contention of the defendant is that the balance of $1200 due the plaintiffs Ginsberg is due from Adams and not from G & K. Although Goldstein and Krasnow were asked for payment on several occasions by the plaintiffs, they promised payment and requested

additional time, but never told the plaintiffs that the money was due from Adams rather than from G & K.

G & K did not at any time conduct any business (other than such dealings it had with the plaintiffs in these cases) at 2 Union Street, Boston. Joseph Goldstein and Israel Krasnow were officers, directors, and stockholders in both corporations but there was a third officer, director and stockholder in Adams who had no interest in G & K. It does not appear from the report whether the stock interest of such third party in Adams was substantial or trivial.

At the close of the trial, the defendant submitted identical requests for rulings in each of the cases, and it now claims to be aggrieved by the trial judge's denial of requests numbered 11, 12, 14, 15, 16 and 17. To avoid confusion, the correctness of the court's rulings with respect to each case will be discussed separately.

### The Ginsberg Case.

All of the requests denied, amounted in substance to requests for rulings that as matter of law the court must find for the defendant. If a finding could properly have been made for the plaintiff in any amount, these requests were correctly denied. *John T. D. Blackburn, Inc. v. Livermore*, 317 Mass. 20, 21; *Milmore v. Landau*, 307 Mass. 589, 590; *Hooper v. Kennedy*, 320 Mass. 576.

It is clear that the trial judge could properly have found that the original contract for altering and remodeling the premises at 2 Union Street was made between the plaintiffs Ginsberg and the defendant corporation; that when made, that contract was within the scope of the contractual powers of the defendant; and that the plaintiffs performed work and furnished materials pursuant to that contract for an appreciable period before Adams Beef Company, Inc. came into existence. Consequently, the court could properly find and rule that as to that portion of the work and material furnished by the plaintiffs Ginsberg, they were entitled to recover

from the defendant, unless the plaintiffs had agreed to a novation under which they would discharge the defendant corporation of its liability under the original contract, and look only to some other person or corporation for payment. The burden of proving such a novation would be on the defendant. *Tudor Press, Inc. v. University Distributing Co.*, 292 Mass. 339, 340; *Federal National Bank v. O'Connell*, 305 Mass. 559, 565. There was evidence that the plaintiffs Ginsberg persistently refused to substitute Adams for the defendant as the party to whom the plaintiffs would look for payment, and the trial judge was free to believe this evidence. *J. P. O'Connell Co. v. Maryland Casualty Co.*, 302 Mass. 232; *Memishian v. Phipps*, 311 Mass. 521; *Engel v. Checker Taxi Co.*, 275 Mass. 471.

We cannot follow the contention of the defendant that after the incorporation of Adams, it became liable, instead of the defendant, for all work performed and materials furnished, in the alteration of the Union Street premises. The rule is well established that even "if a contract is made in the name and for the benefit of a projected corporation, the corporation after its organization cannot become a party to the contract, even by adoption or ratification of it". *Abbott v. Hapgood*, 150 Mass. 248, 252; *Pennell v. Lothrop*, 191 Mass. 357, 360; *Koppel v. Mass. Brick Co.*, 192 Mass. 223, 225.

### The Harvard Electric Case.

The requests for rulings which were denied in this case are identical with those discussed above with respect to the companion case. Requests numbered 11, 12, 14, 15 and 16 were, in substance, requests for rulings that as matter of law the evidence was not sufficient to warrant a finding for the plaintiff, while request numbered 17 reads as follows:

"The contract for work and labor done and materials furnished by the plaintiff at 2 Union Street, Boston, is *ultra vires* as to corporate powers of the defendant corporation and the defendant corporation is not legally obligated to pay for same."

At the outset it may be noted that while the report purports to contain all the evidence material to the questions reported, there is no report of any evidence of work performed or materials furnished by Harvard Electric. However, all of the parties have argued the case on the basis that such work and materials were actually furnished. This omission from the report not having been argued by the defendant, it is deemed to have been waived. *Connell v. Maynard,* 322 Mass. 245, 246; *Brockton Sav. Bank v. Shapiro,* 324 Mass. 678, 684; *Geffen v. Paletz,* 312 Mass. 48, 58; *Reardon v. Boston El. Ry.,* 242 Mass. 383, 384.

The plaintiff argues that the evidence warranted a finding that the defendant corporation acting through Goldstein and Krasnow at the conference held a few days before February 20, 1951, contracted to pay for electrical work to be done and materials to be furnished by the plaintiff on the Union Street premises. Granting that to be so, though we have some doubt about it, we are of the opinion that such a contract, even if made, would be *ultra vires* and could not support a finding for the plaintiffs on the facts of this case.

Normally, the officers of a corporation do not have authority to give away corporate property or to commit their corporation to the assumption of the debts of another or to pay for services or materials furnished to another. *M. McDonough Corp. v. Connolly,* 313 Mass. 62, 67; *Lydia E. Pinkham Medicine Co. v. Gove,* 305 Mass. 213, 217. And in the absence of some special provision in the charter of a business corporation, it is beyond the powers of the corporation to make such commitments. *M. McDonough Corp. v. Connolly,* supra; *Limerick Mills v. Royal Textile Co.,* 288 Mass. 479; *Commercial Cas. Ins. Co. v. Daniel Russell Boiler Works, Inc.,* 258 Mass. 453; *Davis v. Old Colony R.R.,* 131 Mass. 258; Cf. *W. W. Britton, Inc. v. S. M. Hill Co.,* 327 Mass. 335, 338.

Applying those principles, it follows that even if Goldstein and Krasnow purported to act for and bind

the defendant to pay for work to be done by Harvard Electric on premises leased to and occupied by Adams as the latter's place of business, such an agreement would be *ultra vires* and unenforceable by Harvard Electric, unless the circumstances were such that the defendant would be estopped to assert that defence. *W. W. Britton, Inc. v. S. M. Hill Co.,* supra; *Dome Realty Co. v. Gould,* 285 Mass. 294, 300; *Nimms v. Mt. Herman School,* 160 Mass. 177, 179-80. The evidence would not sustain a finding that the defendant corporation received any benefit from electrical work done by Harvard Electric or that there is any other sound basis for estopping the defendant from relying upon the defence of *ultra vires.* The work done by Harvard Electric pertained to premises leased and operated by Adams, and the defendant did not conduct its business there at any time. The situation here is in many respects distinguishable from that which existed in the *Britton* case cited above, where it was held that it need not be considered with nicety which of two very closely related corporations received the benefit of the services for which the plaintiff sought to recover. In the instant case, the two corporations involved did not have the same directors or stockholders, did not conduct their respective businesses at the same location or in direct proximity with one another, and did not, so far as the evidence discloses, maintain any sign or other indicia to indicate to any outsider that G & K was doing business at the Union Street premises.

The recent case of *Wiley & Foss, Inc. v. Saxony Theatres, Inc.,* 332 Mass. A. S., 172, is distinguishable from the case at bar; the defense of *ultra vires* was not discussed, and the court appeared to lean heavily on the fact that invoices for the work in question had been sent to the corporation sought to be charged. There is no evidence here that the plaintiff, Harvard Electric, had ever sent an invoice to the defendant corporation or that the plaintiff had any entries in its ledger or other books of account

listing the defendant corporation as the party to be charged for the work done and materials furnished in connection with the Union Street premises.

For the reasons stated, it was error to deny defendant's request numbered 17 in the Harvard Electric Case.

## ORDER:

In the case of Abraham Ginsberg et al v. G & K Provision Company (case No. 342160), report dismissed. In the case of Harvard Electric and Machine Company, Inc. v. G & K Provision Company, (case No. 338363), the action of the trial judge in denying the defendant's request for ruling numbered 17 is reversed and a finding is to be entered for the defendant.

Robert Robinson, for the plaintiffs Harvard Elec.

William Kopans, for the plaintiffs Ginsberg.

Harold Brown, for the defendant.