**Wolfgang JURGENS, Plaintiff,**

v.

**Nicholas A. ABRAHAM et al.,
Defendants.**

**Civ. A. No. 84–2560–G.**

United States District Court,
D. Massachusetts.

Aug. 28, 1985.

William Burke O'Leary, Danvers, Mass., for plaintiff.

Erik Lund, Posternak, Blankstein & Lund, Boston, Mass., for Abraham Lucas.

Allan E. Taylor, James J. Duane, III, Taylor, Anderson & Travers, Boston, Mass., for Stanley Needles.

Erik Lund, Posternak, Blankstein & Lund, Boston, Mass., for John S. Spiliakos.

## MEMORANDUM AND ORDERS ON DEFENDANTS' MOTIONS TO DISMISS

GARRITY, District Judge.

Plaintiff filed the instant action on August 17, 1984, alleging several causes of action against defendants, all of whom are attorneys at law. Jurisdiction is based on 28 U.S.C. § 1332, diversity of citizenship. Defendants have each moved to dismiss the case pursuant to Fed.R.Civ.P. 12(b)(6). After hearing oral argument and considering the briefs submitted by the parties, the court grants defendant Abraham's and defendant Spiliakos' motions in part and denies them in part and grants defendant Lucas' motion.[1]

### I. *Statement of Facts*

Plaintiff, a West German real estate developer, entered into an agreement with First Boston Arabian Corporation ("FBAC") during 1981. FBAC, a Massachusetts corporation, was to act as a finder, procuring a $75,000,000 real estate loan for plaintiff. Ala Fadili Al Tamimi ("Ala") and defendant Abraham were the sole shareholders of FBAC, the officers of the corporation, and two of its directors. The offices of FBAC were located at the law firm of Abraham and his partner, defendant Spiliakos, both of whom acted as counsel for the corporation.

According to the letter agreement dated August 17, 1981, FBAC agreed to secure the loan commitment for plaintiff for an eight year term at an annual interest rate of 8 percent. The $75,000,000 loan was to be obtained through Ala's purported contacts with wealthy Arab investors. Plaintiff agreed to pay a $2,500,000 finder's fee

---

1. At the February 15, 1985 hearing the court granted defendant Needles' motion to dismiss for lack of subject matter jurisdiction. The court also denied defendants' motions to transfer the case to Judge Skinner.

to FBAC once the loan commitment was secured and to advance $870,000 as earnest money to FBAC to be placed in its escrow account, which was controlled exclusively by Abraham. Plaintiff was also to furnish two Mercedes Benz automobiles, two BMW automobiles, and several Rolex watches.

On or about August 25, 1981, Ala and Spiliakos met with plaintiff in West Germany to procure the earnest money, cars and watches from plaintiff. According to plaintiff, Ala persuaded plaintiff to advance the money directly to him. (Plaintiff also paid $12,000 for travel expenses to Ala.) Spiliakos then aided Ala in opening an account in Ala's name on August 26, 1981 at the Dresdner Bank in Munich, where the money was deposited. From there, according to plaintiff, the money was transferred on August 29, 1981 by Ala, again with Spiliakos' assistance, to Ala's personal account at Irving Trust in London, England. At no time did Ala or Spiliakos transfer the money to FBAC's escrow account.

Plaintiff alleges that Abraham learned on September 5, 1981 that the money had not been transferred to the escrow account, but took no action to ascertain its whereabouts. During the next ten days, Abraham also became aware of other wrongdoing by Ala in his dealings with FBAC and its clients. On September 15, 1981, Abraham and Spiliakos went to West Germany still expecting to close the transaction with plaintiff. Ala failed to appear for the closing.

Approximately one week later, Abraham, acting on FBAC's behalf, sued Ala in London and Essex County, Massachusetts. He also attached over $900,000 of Ala's money in London. Abraham then sent a telex to plaintiff, informing him that approximately $500,000 of the attached funds were set aside for him and that Abraham would make arrangements for its eventual payment to plaintiff.

According to plaintiff, Abraham then began to negotiate with plaintiff and other similarly situated FBAC clients for the return of his money. During October 1981, defendant Lucas, a Massachusetts attorney who represented two of Ala's brothers, recommended that defendant Needles, a United States citizen living and working as an attorney in London, represent Ala in the London action. A "Release and Settlement of Claims" was then negotiated and signed by plaintiff on October 17, 1981. For 1.7 million deutschemarks (approximately $680,000) plaintiff released his claims against FBAC, Abraham, Ala, and Spiliakos.[2] Plaintiff alleges that on November 9, 1981, Abraham was informed by an attorney who previously represented Ala, Edgar L. Kelley, that Ala planned to abscond with the money a second time. However, Abraham ended the London litigation and released the attached funds to Ala. On or about November 20, 1981, Ala absconded with the money once again.[3]

On May 7, 1982, plaintiff brought an action in this court against Ala, two of his brothers, and FBAC. *Jurgens v. Ala Fadili Al Tamimi et al.*, C.A. No. 82–1217–S. A judgment by default against Ala was entered on October 27, 1982. On May 21, 1982, FBAC filed a motion to dismiss and for judgment on the pleadings. Although served with the motion, plaintiff filed no opposition. On September 15, 1983, FBAC's motion was granted by an endorsement of the motion. A judgment by default was entered on October 27, 1982 against Amer Al Fadili. Adel Al Fadili's motion for summary judgment was granted on July 12, 1984, no timely opposition having been filed by plaintiff. Judgment dismissing the complaint was entered on July 13, 1984. On August 17, 1984 the instant action was filed.

---

2. Plaintiff's allegations are unclear as to which persons actually participated in the release and with respect to the chronology of events. Plaintiff also claims in his memorandum in opposition to defendants' motions to dismiss that the release was fraudulently procured, but does not state the factual basis for such claim. *See* Fed. R.Civ.P. 9(b).

3. According to the complaint, plaintiff has recovered only one automobile and one watch.

## II. *Defendants' Motions to Dismiss*

■ Defendants Abraham, Spiliakos, and Lucas all move to dismiss this action under the doctrine of collateral estoppel, claiming that in dismissing plaintiff's various causes of action against FBAC in the 1982 case, Judge Skinner necessarily found that the release signed by plaintiff was valid and that plaintiff was responsible for allowing Ala to abscond with the money a second time.[4] The defense of collateral estoppel is available if the issues of fact or law were "actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment." Restatement (Second) Judgments, § 27. The issues to be precluded must have been decided upon after "full litigation and careful decision." *Homeowners Federal Savings and Loan Association v. Northwestern Fire and Marine Insurance Co.*, 1968, 354 Mass. 448, 455, 238 N.E.2d 55.

The record in the earlier case does not support defendants' contention. FBAC filed a motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6) or, alternatively, pursuant to Fed.R.Civ.P. 12(c). No basis for the motion was stated by FBAC and no memorandum was filed in support thereof.[5] The motion was unopposed by plaintiff. The court granted FBAC's motion without explanation and there were various alternative theories possible, e.g., that plaintiff's allegations failed to state a cause of action against FBAC or that plaintiff had released FBAC from liability. Therefore, plaintiff is not collaterally estopped from raising any of the issues stated in his complaint.[6]

### a. *Defendant Abraham's Motion to Dismiss*

In his complaint, plaintiff alleges causes of action against Abraham for negligence, breach of contract, civil conspiracy, and under M.G.L. c. 93A. Abraham has moved to dismiss all of these causes of action for failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6).

■ In his brief in opposition to defendants' motions to dismiss, plaintiff presents various theories which he argues support his negligence claim against Abraham. We reject out of hand plaintiff's first theory, viz., that as a shareholder of FBAC Abraham was negligent in failing to inform plaintiff of the so-called "true nature" of FBAC. This theory fails to allege either a duty or a breach of that duty by Abraham and is too vague to support a claim of negligence.[7]

■ We also reject plaintiff's second theory, which claims that Abraham was negligent in performing his duties as an escrow agent. Although an agent may be liable for negligence in failing to perform his duties in accordance with the escrow agreement, he has no duties or liabilities to either party until a deposit is made with him. 28 Am.Jur.2d § 11. Abraham cannot be held liable as an escrow agent for the failure of Ala and Spiliakos to properly deliver the earnest money to him.

■ Plaintiff's complaint does state a cause of action for negligence against Abraham as an attorney under *Page v. Frazier*, 1983, 388 Mass. 55, 445 N.E.2d 148. According to the Supreme Judicial Court, a non-client may have a cause of action against an attorney if the attorney,

---

4. In their answers, defendants may plead the release as an affirmative defense to plaintiff's claims.

5. The court did not treat the motion as one for summary judgment pursuant to Rule 12(c), as no hearing was held nor was plaintiff given the opportunity to serve opposing affidavits prior to the day of the hearing in accordance with Fed. R.Civ.P. 56(c). Therefore, Abraham's affidavit filed with FBAC's motion could not have formed the basis of the court's decision.

6. We also find that the principles of res judicata do not apply to this action with respect to defendant Abraham. According to the Restatement (Second) of Judgments, § 59, a judgment in an action by or against a closely held corporation may be conclusive upon the shareholders "as to *issues* decided therein" (emphasis added). As stated *ante*, the earlier action does not establish which issues were there decided.

7. As discussed *post*, we find that plaintiff's factual allegations support a cause of action for fraud instead.

in acting for his client, knew that the non-client was relying on his services. *Id.* at 64, 445 N.E.2d 148. "Foreseeable reliance" is essential to this cause of action. *See Capitol Indemnity Corp. v. Freedom House Development Corp.*, D.Mass.1980, 487 F.Supp. 839, 842; *Credit Alliance Corp. v. Arthur Andersen & Co.*, 1985, 65 N.Y.2d 536, 493 N.Y.S.2d 435, 483 N.E.2d 110. When Abraham, acting as attorney for FBAC, attached Ala's money during the course of the London litigation, he indicated to plaintiff in a telex that he was doing so for plaintiff's benefit. Because of this representation, plaintiff arguably was justified in relying on Abraham *qua* attorney. Therefore, we find that plaintiff has adequately stated a claim against Abraham for negligence in failing to ensure that the attached money would not be diverted by Ala in violation of the release.[8]

■ Plaintiff's next cause of action against Abraham is for breach of contract. Plaintiff had no contract directly with Abraham; rather, plaintiff's contract was with FBAC. However, plaintiff seeks to have the court disregard the corporate veil of FBAC, claiming that it was a "spurious corporation." In order to disregard a corporate entity and hold its owners liable, the corporation must have been organized for fraudulent purposes. *M. McDonough Corp. v. Connolly*, 1943, 313 Mass. 62, 66, 46 N.E.2d 576; *My Bread Baking Co. v. Cumberland Farms, Inc.*, 1968, 353 Mass. 614, 233 N.E.2d 748; *Pepsi-Cola Metropolitan Bottling Co. v. Checkers, Inc.*, 1 Cir. 1985, 754 F.2d 10, 16. Plaintiff alleges in his complaint that FBAC was created by Abraham and Ala to perpetrate a fraud. If plaintiff is able to prove this allegation, Abraham will be liable for any breach of contract by FBAC.

■ The court dismisses plaintiff's cause of action for civil conspiracy against Abraham, as well as against defendants Spilia-kos and Lucas. Civil conspiracy is a very limited cause of action in Massachusetts. In order to state a claim of civil conspiracy, plaintiff must allege that defendants, acting in unison, had "some peculiar power of coercion" over plaintiff that they would not have had if acting independently. *Fleming v. Dane*, 1939, 304 Mass. 46, 50, 22 N.E.2d 609. Plaintiff has failed to allege any such coercive power by defendants and therefore does not state claim for civil conspiracy.

■ We do find that plaintiff has stated a claim for fraud against Abraham, although the complaint does not explicitly contain a fraud count. Fed.R.Civ.P. 9(b) requires that a complaint state "the circumstances constituting fraud" with particularity. However, "use of the word 'fraud' is not indispensable to the pleading of a cause of action entitling the pleader to relief upon the ground of fraud." *Simcox v. San Juan Shipyard Inc.*, 1 Cir.1985, 754 F.2d 430. The loan transaction described by plaintiff in his pleadings is essentially a fraudulent scheme. Plaintiff specifically alleges that the officers and attorneys of FBAC made false and misleading representations to plaintiff to induce him to enter into an agreement designed to defraud him of a substantial sum of money (complaint, ¶ 13). As all pleadings are to be "construed so as to do substantial justice," Fed. R.Civ.P. 8(f), we find that plaintiff has sufficiently pleaded a claim for fraud.[9] Consequently, we also find that plaintiff has stated a cause of action under M.G.L. c. 93A, since acts of fraud fall within this statute. *Evans v. Yegen Associates, Inc.*, D.Mass. 1982, 556 F.Supp. 1219, 1227.

### b. *Defendant Spiliakos' Motion to Dismiss*

■ Plaintiff also has claimed causes of action against Spiliakos for negligence, breach of contract, civil conspiracy and un-

---

**8.** Prior to the time that Abraham attached the London funds and sent the telex to plaintiff, we find no basis for a claim by plaintiff that he relied on Abraham as an attorney.

**9.** The complaint does not allege that Abraham participated in procuring the October 17 release in a fraudulent manner; nor does it claim that Abraham released the attached funds to Ala in order to aid him in the second swindle. Instead, with respect to the release and discharge of the attached property, plaintiff alleges only that Abraham was negligent.

der c. 93A. As stated *ante*, we grant Spiliakos' motion with respect to the civil conspiracy count. We also grant his motion with respect to plaintiff's contract claim because plaintiff has not alleged any contractual relationship between himself and Spiliakos.

▆ Plaintiff has stated a cause of action for negligence against Spiliakos in his capacity as an attorney for FBAC under *Page v. Frazier, supra.* Plaintiff has alleged that he relied on Spiliakos *qua* attorney at the time that Spiliakos and Ala met with plaintiff in West Germany. Plaintiff further alleges that Spiliakos was negligent in allowing Ala to take the earnest money personally and deposit it in his own account rather than transmitting the money to FBAC's escrow account, and in failing to notify Abraham, the escrow agent, that the funds had been diverted. Therefore, Spiliakos' motion is denied with respect to plaintiff's negligence claim.

▆ We also find that plaintiff has stated a cause of action for fraud and under c. 93A against Spiliakos. According to plaintiff's allegations, Spiliakos directly aided Ala in absconding with the earnest money the first time (complaint, ¶ 17). Therefore, he may be liable for fraud and under c. 93A.[10]

#### c. *Defendant Lucas' Motion to Dismiss*

▆ Plaintiff's claims against Lucas include negligence and civil conspiracy. The court dismisses both of those counts. Plaintiff seeks to invoke the *Page v. Frazier* doctrine against Lucas. However, according to the complaint, Lucas merely recommended that Attorney Needles represent Ala in the London action and then participated in some undefined way in obtaining the October 17 release. Plaintiff has not alleged any facts which would indicate that he placed any reliance on Lucas as an attorney. Rather, it appears that Lucas was acting on the behalf of Ala, whose interests were clearly opposed to

plaintiff's. *See Page v. Frazier, supra,* 388 Mass., at 63, 445 N.E.2d 148.

Plaintiff's complaint also does not state a claim for fraud or under c. 93A. As previously discussed, plaintiff has not adequately particularized his claim that Lucas aided in fraudulently obtaining the release from plaintiff. Plaintiff, therefore, has failed to meet the requirements of Fed.R.Civ.P. 9(b). *See Simcox v. San Juan Shipyard, Inc., supra.*

### III. *Summary*

Defendant Abraham's motion to dismiss is granted with respect to the civil conspiracy claim. Defendant Spiliakos' motion is granted with respect to the civil conspiracy and contract claims. Their motions are denied in all other respects. Defendant Lucas' motion to dismiss is granted.

▆

---

**10.** Defendant Abraham may be held jointly and severally liable for the negligent or fraudulent acts of Spiliakos, his law partner, if plaintiff proves that Spiliakos was acting in the ordinary course of the business of the partnership or with the authority of Abraham. M.G.L. c. 108A, §§ 13, 15.