Sherman, PJ.
This is an action to recover for the defendant-subcontractor’s alleged breach of construction contracts and unfair and deceptive conduct in violation of G.L.c. 93A.
The sole issue presented by this appeal is the propriety of the trial court’s entry of summaiy judgment in favor of the individual defendant, Fred Quinlan (“Quinlan”), who is the sole stockholder, principal officer and director of the corporate defendant, Atrium Steel & Aluminum, Inc. (“Atrium”). AsgroundsforhisDist./Mun. Cts.R.Civ. P., Rule 56 motion, Quinlan asserted that he never contracted, nor conducted business, with the plaintiff in his individual capacity, but instead acted solely as the corporate officer of Atrium, a viable corporation, and that any liability for breach of contract or violation of G.L.c. 93A was thus the corporate liability of Atrium which could not be imputed to him as an individual.
The complaint curiously asserts that the plaintiff contracted with either the individual or the corporate defendant, and that either or both are liable for the damages the plaintiff now claims. In its counteraffidavit in opposition to Quinlan’s summary judgment motion, the plaintiff averred in substance that Quinlan led the plaintiff to believe that itwas dealing personally with Quinlan as an individual at all times during the course of the parties’ business dealings.
In addition to the pleadings, Quinlan’s Rule 56 motion and the plaintiffs counteraffidavit, memo randa and a myriad of exhibits[3] were submitted by both parties for the court’s consideration in ruling on Quinlan’s motion. These exhibits are referenced in a chronological history of the parties’ business dealings on twenty-one (21) dates from 1987 to 1989 which is setforth in the report, and include bid proposals containing the names of both the corporate and the individual defendants, billing statements, tax returns, articles of incorporation, filings with the Secretary of State, telephone listings, bank records, notices of tax liens, depositions and other matters, many of which are relevant to the issue of the individual or corporate liability of the named defendants.
1. Notwithstanding what might be considered substantial evidence in favor of the individual defendant herein, we are not faced with the task of ruling on the merits of *105 this case, but with determining whether the grant of summary judgment was proper because no genuine issue of material fact is in dispute. Attorney General v. Bailey, 386 Mass. 367, 371 (1982). Ct. Allstate Ins. Co. v. Bearce, 412 Mass. 442 (1992). Such an issue exists where evidence is presented upon which a reasonable juiy could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 206 S. Ct. 1505 (1986). In this sense, the standard for summary judgment is said to mirror the standard for a directed verdict, and the court must draw all inferences in the light most favorable to the party opposing the motion. Coveney v. President & Trus. of the College of the Holy Cross, 388 Mass. 16, 17 (1983). Utilizing this standard, we hold that the reported evidence on various material facts in this matter is conflicting, and that there exist genuine issues which require a trial on the merits. The allowance of Quinlan’s motion for summary judgment was thus error.
2. The primary issue of material fact is whether the plaintiff actually contracted with Quinlan, the individual defendant, or with Atrium, the corporation owned and controlled by him. This case is replete with disputes as to whom and by whom proposals for work were made, accepted and performed, and with conflicting assertions as to the knowledge and intent of the parties in their billing and payment procedures. The plaintiff denies the existence of any express or implied contract with Atrium, or of any evidence establishing that it knew it was dealing with the corporation at the times relevant to this action. Conversely, Quinlan disputes the existence or any express or implied contract by him with the plaintiff. The existence of an implied contract may be inferred from the actions of the parties, Grant v. Carlisle, 328 Mass. 25, 29 (1951), and presents a question of fact.
Quinlan relies on written contracts purportedly evidencing the parties’ agreements, and argues that the construction of such contracts was a question of law properly resolved on a summary judgment motion. Complex factual issues exist, however, as to the nature of Quinlan’s signature of such documents either as an individual, or as the agent for a disclosed principal. Cf. G.L.c. 106, §3-403(2); Restatement, Agency, 2d. §§155,156 and Reporters’ Comments. Moreover, there is evidence, including Quinlan’s deposition testimony, which suggests that these written contracts were later modified or superseded by oral agreements between the plaintiff and Quinlan. The existence, terms and performance or breach of an oral contract are questions of factfor the trial court. See First Penn. Mortg. Tr. v. Dorchester Sav. Bk., 395 Mass. 614, 622-624 (1985); Gleason v. Mann, 312 Mass. 420, 423 (1943).
3. Even if it could be determined as a matter of law from the parties’ Rule 56 submissions that the plaintiff contracted with Atrium, the corporate defendant, a second issue arises as to whether Quinlan conducted the affairs of Atrium in disregard of the distinction between the corporate entity and himself as an individual. The plaintiff contends that Quinlan should not be shielded from personal liability by the corporate form of his business undertakings because he organized, controlled and managed Atrium as little more than an indistinguishable instrumentality, agency, conduit or adjunct of his personal, individual activities.
In the absence of a fraudulent purpose in its organization, a corporation is customarily recognized in law as a separate legal entity, even in those instances in which the ownership of all stock and the absolute control of corporate affairs is vested in a single individual. See M. McDonough Corp. v. Connolly, 313 Mass. 62, 65-66 (1943). Although the reported evidence easily supports a characterization of Atrium as a “mom and pop” operation, it is clear that Quinlan intended to be shielded from personal liability by the creation of this corporate entity. It is rare that a court will permit a claimant to look beyond an existing corporation to its officers and sharehold-ersforthe satisfaction of an apparentcorporate liability. Evans v. Multicon Const. Corp., 30 Mass. App. Ct. 728, 732 (1991). A corporate form can and should be disregarded only where it is a sham, or is used to perpetrate deception.
Facts not infrequently exist which warrant or require that courts look *106 through corporate forms to the dominating personality behind them in order to prevent fraud, to protect the public, or to accomplish some essential justice.
New England Theaters, Inc. v. Olympia Theaters, Inc., 287 Mass. 485, 493 (1934), cert. denied, 294 U.S. 713.
Whether Quinlan’s conduct reached such critical stage is a material issue of fact in dispute in this case. The resolution of this issue requires consideration at trial of evidence of those factors indicative of a fraudulent or misleading control of a corporation as the buffer or alter ego of an individual. Such factors include the intermingling of funds, payment by or to the individual without regard to the corporation actually obligated to perform or to receive payment, and corporate advances and loans to the individual without proper corporate authority. My Bread v. Cumberland Farms, Inc., 353 Mass. 614, 619 (1968). Although the plaintiff cannot persuasively claim to have been misled by certain aspects of the control and management of Atrium which came to light only after the commencement of this litigation, the report sets forth other evidence giving rise to the factual issue of Quinlan’s management of the defendant corporation.
4. Accordingly, the allowance of defendant Quinlan’s Rule 56 motion is hereby reversed, and summary judgment entered for the defendant is vacated. This case is returned to the Salem Division for trial. So ordered.

 Dist./Mun. Cts. R. Civ. P., Rule 56 (c) provides in partthatin determining whether agenuine issue of material fact exists, the court may consider the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any. However, such list is not exhaustive. See, e.g., White v. Peabody Construc. Co., 386 Mass. 121 (1982).