WILEY & FOSS, INC. *vs.* SAXONY THEATRES, INC.

Worcester.   September 25, 1956. — January 10, 1957.

Present: WILKINS, C.J., SPALDING, WILLIAMS, COUNIHAN, &
WHITTEMORE, JJ.

*Corporation,* Ultra vires.   *Contract,* Building contract, Validity.

Ultra vires was not a defence in an action by a building contractor against
a corporation for alteration and repair work done at a theatre, although
the theatre was owned by another corporation and the defendant had
no interest therein and received no benefit from the work, where the
defendant was authorized by its charter to own, maintain and operate
theatres, the plaintiff did the work on order of an officer of the de-
fendant having apparent authority to contract for it, and the plaintiff
had no knowledge until long after the work was completed of the
ownership of the theatre by the other corporation and the absence of
any interest of the defendant therein.

CONTRACT.   Writ in the District Court of Fitchburg dated
July 28, 1950.

Exceptions saved at a trial in the Superior Court upon re-
moval from the District Court were sustained by this court
in a decision reported in 332 Mass. 172.   There was a second
trial of the action before *Dewing,* J.

*Walter H. McLaughlin,* for the defendant.

*Irvin E. Erb,* (*Donald R. Erb* with him,) for the plaintiff.

SPALDING, J.   This case, which is an action of contract to
recover for making repairs and alterations to the Gem
Theatre in Fitchburg, comes here for the second time.   In
332 Mass. 172 the plaintiff's exception to the direction of a
verdict for the defendant was sustained.   At the second
trial the defendant's motion for a directed verdict was de-
nied, and the jury returned a verdict for the plaintiff.   The
case now comes here on the defendant's exceptions to the
denial of its motion for a directed verdict, and to the refusal
of certain of its requests for instructions.

The evidence pertinent to the questions presented may be summarized as follows: The defendant, a Massachusetts corporation, was organized in December, 1948. Under its charter it is empowered "to exhibit motion picture films, plays . . . [and] to erect, purchase, lease, own, manage, maintain, operate, and equip . . . theatres, concert halls, buildings and places of amusement." Its issued capital stock consisted of seventy-five shares of "Class A" common, of which each of the following owned twenty-five shares, Irving A. Sisson, Joseph Cohen, and Benjamin Sack. All were directors. Sisson was president and treasurer, Cohen was vice-president, and Sack was second vice-president.

Another corporation was organized in March of 1949 under a name not here material which later in that year was changed to Gem Theatre of Fitchburg, Inc., and will be referred to hereinafter as Gem. Its outstanding capital stock, fifty shares of "Class A" common, are held twenty-five shares each by Sisson and Sack, president and treasurer, respectively, who were also directors. The third director was one Shapiro.

Each corporation had its principal office at 15A Bleachery Court, Somerville, and each had the same clerk, Eunice Patick.

The plaintiff is a corporation which conducts a general contracting business in Fitchburg. On December 20, 1948, the plaintiff was engaged by Sisson to remodel a theatre in Fitchburg which the defendant had taken over and planned to operate as the Saxony Theatre. The major portion of this work was completed in February, 1949, and the theatre opened. Thereafter from time to time through June, 1949, additional remodeling and repair work was performed by the plaintiff. The total charge for this work was $6,645.05. There was no written contract, all of the work described above being done on oral orders from Sisson. Monthly invoices covering the work done were sent by the plaintiff to the defendant at 15A Bleachery Court, Somerville. As of December, 1949, the balance due for this work was $1,016.06, but it need not concern us. This balance was

shortly thereafter reduced by a payment of $500 and at the
first trial a verdict for the plaintiff for the remainder, which
was the subject of the first count, was directed by consent
of the parties.[1]

On December 29, 1949, a conversation took place at the
plaintiff's office between Sisson and George W. and Robert
E. Hyatt, president and vice-president, respectively, of the
plaintiff.  Sisson stated that the defendant had "taken over"
the Gem Theatre, also in Fitchburg, and that it desired to
have the plaintiff remodel and repair it.  The plaintiff's
president then pointed out that there was an unpaid bal-
ance for work performed on the Saxony Theatre.  Sisson
replied that the Saxony Theatre was very profitable and
guaranteed that the plaintiff would be paid in full for that
job.  About January 5, 1950, Sisson and Hyatt, the plain-
tiff's president, went to the Gem Theatre, and Sisson stated
what he wanted done.  Shortly thereafter the plaintiff
started to do the repairs and alterations ordered by Sisson.
The work was completed by February 17, 1950, and early in
March an invoice for this work in the amount of $1,951.31
was addressed and mailed to the defendant at 15A Bleachery
Court, Somerville.

In June, 1950, the plaintiff received a letter from a firm
of lawyers advising it of a meeting of the creditors of Gem.
This was the first intimation to the plaintiff that anyone
but the defendant had any interest in the Gem Theatre.
The plaintiff was not represented at the meeting and never
made a claim against Gem.  No one representing the de-
fendant ever informed the plaintiff prior to the bringing of
this action that it should not have been charged for the
work on the Gem Theatre.  All of the plaintiff's day to
day bookkeeping records show that all charges for this work
were entered solely against the defendant.  The plaintiff
never was paid anything by the defendant for this work.

There was no evidence introduced by the plaintiff that
the Gem Theatre was owned or controlled by the defendant

---

[1] The present controversy relates to the second count of the declaration in
which recovery is sought for repairs and alterations to the Gem Theatre.

and the plaintiff does not so contend. There was evidence from the defendant that it had no interest in this theatre, that the board of directors of the defendant never authorized Sisson to incur liability for this work, and that the directors of the defendant had no knowledge that the work was being charged to the defendant until the present action was brought.

The defendant does not argue that the evidence would not warrant a finding that Sisson had apparent authority to make the contract in question on behalf of the defendant. The judge instructed the jury on this aspect of the case at some length and no exceptions to these instructions were taken by the defendant. The defendant's position is that a contract of the sort here involved, whereby the defendant is to be charged for work performed for another corporation and for which the defendant derived no benefit, is ultra vires and unenforceable. This defence, which was pleaded (see *Nowell* v. *Equitable Trust Co.* 249 Mass. 585, 595–596), is raised both by its motion for a directed verdict and by certain requests for instructions which were denied subject to its exceptions.[1] The question presented was not raised or dealt with when the case was here before.

It is, of course, hornbook law that a corporation has the power to do only such business as it is authorized to do by its charter. *Davis* v. *Old Colony Railroad*, 131 Mass. 258, 259. *Teele* v. *Rockport Granite Co.* 224 Mass. 20, 24. Transactions not so authorized are ultra vires. Persons dealing with a corporation are presumed to know the extent of its

---

[1] The requests were as follows: "2. Ordinarily the remodelling of a theatre owned by one corporation to be paid for from the funds and assets of a second corporation which received no benefit therefrom would not be an incident of normal routine business within the authority of the president to authorize without prior approval of the board of directors. . . . 6. A corporation does not have the power to enter into contracts not authorized by its charter or by-laws and not made in the furtherance of the object for which it was formed, and any such contract is ultra vires and void. 7. A corporation cannot be held liable upon a contract not in the furtherance of the object for which it was formed and from which it has received no benefit. . . . 8. A corporation has no power to assume the debts or obligations of another corporation unless it receives a benefit therefrom and if a corporation does assume the debts of another corporation without receiving any benefit therefrom, the contract is ultra vires and the corporation is not liable."

powers. *Commercial Casualty Ins. Co.* v. *Daniel Russell Boiler Works, Inc.* 258 Mass. 453, 455.

Our cases, however, make a distinction between the exercise by a corporation of powers manifestly outside the general authority granted by its charter, and the exercise of powers which, although of the sort which in general the corporation possesses, have been abused in the particular case. In the latter case if the abuse of corporate authority is unknown to the party dealing with the corporation the defence of ultra vires is not available to the corporation. *Monument National Bank* v. *Globe Works*, 101 Mass. 57, 58. *J. G. Brill Co.* v. *Norton & Taunton Street Railway*, 189 Mass. 431, 437. *Timberlake* v. *United Order of the Golden Cross*, 208 Mass. 411, 422–423. See *Davis* v. *Old Colony Railroad*, 131 Mass. 258, 260;[1] *Nowell* v. *Equitable Trust Co.* 249 Mass. 585, 600. Compare *M. McDonough Corp.* v. *Connolly*, 313 Mass. 62, 66.

The case at bar, we think, falls within this principle. It was within the corporate authority of the defendant here to operate theatres and to remodel and repair them if necessary. The fact that the particular theatre which was the subject of the contract was not owned by the defendant was not, on this record, known to the plaintiff. The plaintiff, having reasonably relied on the representations of an apparently authorized corporate official (or so the jury could have found) was under no duty to make further inquiry. See *Neilson* v. *Malcolm Kenneth Co.* 303 Mass. 437, 440; *Wallach* v. *Hadley Co.* 331 Mass. 699, 701.

The defendant relies heavily on *M. McDonough Corp.* v. *Connolly*, 313 Mass. 62, but that case is not controlling. There the defendant received labor and materials from the plaintiff corporation under an agreement with the plaintiff's manager that the defendant was not to pay the plaintiff

---

[1] In the *Davis* case it was said by Chief Justice Gray, "There is a clear distinction . . . between the exercise by a corporation of a power not conferred upon it, varying from the objects of its creation as declared in the law of its organization, of which all persons dealing with it are bound to take notice; and the abuse of a general power, or the failure to comply with prescribed formalities or regulations, in a particular instance, when such abuse or failure is not known to the other contracting party."

therefor but would credit the amount of the plaintiff's bill on a note to the defendant of another corporation, controlled by the plaintiff's manager. It was held that the plaintiff had no authority to assume the obligations of another corporation and that the defendant who had knowledge of the relevant facts was liable to the plaintiff and could not set up such an agreement in defence to the plaintiff's action. In the case at bar there was no evidence that the plaintiff had knowledge that the labor and materials were being furnished on property owned by another corporation.

It follows that the defence of ultra vires was not available to the defendant and the action of the trial judge in submitting the case to the jury and in denying the defendant's requests reveals no error of law.

*Exceptions overruled.*