SUN OIL COMPANY *vs.* REDD AUTO SALES, INC.

Middlesex.    May 4, 1959. — June 10, 1959.

Present: WILKINS, C.J., RONAN, SPALDING, COUNIHAN, & WHITTEMORE, JJ.

*Corporation,* Ultra vires, Check.    *Bills and Notes,* Accommodation, Holder in due course, Payee.

The payee of a check might properly be found to be a holder in due course thereof where the check, signed in blank by the drawer as an accommodation party, was given to the accommodated party with authority to complete it and was then completed by the accommodated party in the presence of a representative of the payee and delivered, complete, to such representative for goods supplied by the payee to the accommodated party.  [387]

A finding that it was not ultra vires a corporation engaged in a "used car" business to give a check for the accommodation of the proprietor of an adjacent filling station was warranted by evidence of a course of dealings between the corporation and the proprietor whereby business was recommended to it by him, it was permitted to park automobiles at the filling station, and it purchased gasoline there at a discount. [387–388]

CONTRACT.    Writ in the District Court of Somerville dated November 14, 1956.

The action was heard by *Sartorelli*, J.

*Abraham Newman*, for the defendant.

*Louis A. D'Angio*, for the plaintiff.

RONAN, J.  This is an action of contract by the payee against the drawer of checks on which payment was stopped. The plaintiff was the supplier of gasoline and oil to a filling station operated by one Lawrence Mulkern.  The defendant was engaged in a "used car" business next door to the filling station.  The declaration was in three counts.  The first count was based upon a check for $1,180.71 given to the plaintiff on October 29, 1956, and made by the defendant. The amount of this check included $545.47, the amount of a check on which payment had previously been stopped by the defendant, plus expense to the plaintiff of $2.06 as protest fee and $633.18 for gasoline and oil delivered to Mulkern on October 29, 1956.  The second count was based upon the check for $545.47 already mentioned; and the third count was based on a check for $529.21.  Payment on the check for $529.21 had also been stopped, but this amount was subsequently paid to the plaintiff by Mulkern.  The only check important to our present inquiry therefore is the one mentioned in count 1 of the plaintiff's declaration.  There was a finding for the plaintiff on this count for the $1,180.71. A report to the Appellate Division was dismissed.

The reported evidence indicates that it was a practice that, whenever the plaintiff made a delivery of gasoline and oil to Mulkern, the latter would go next door and obtain from Romeo Aiello, the president and treasurer of the defendant, a corporation check signed by Aiello, but left blank as to date, amount and payee.  Mulkern would then fill in and deliver the check to the plaintiff's driver in payment. Mulkern would later reimburse the defendant in the amount of the check.  This practice had been in effect for about a year prior to the transaction in question.

Aiello testified that he had authority to sign checks and that he gave the checks to Mulkern signed in blank, knowing that they would be given to the plaintiff in payment for

gasoline and oil supplied to Mulkern by the plaintiff, and further that he, Aiello, authorized Mulkern to complete the checks. Aiello, in addition to being the president and treasurer of the defendant corporation, was its principal shareholder, owning nine of the ten shares of its stock. The remaining share was held by one Domenic Mancuso, a director of the corporation. Mancuso testified that he also issued checks to Mulkern.

Mulkern's purchases from the plaintiff were on the consignment system, payment for a shipment being made at the next following delivery. On October 22, 1956, a delivery was made to Mulkern, and payment was made in the usual way, with a corporation check signed in blank by Aiello and completed by Mulkern. When, however, Mulkern informed Aiello that he could not reimburse the defendant for the amount of the check, Aiello caused payment to be stopped. On October 26, 1956, another delivery was made and payment again was made with a corporation check completed by Mulkern. The amount of this check, however, was eventually paid to the plaintiff by Mulkern. On October 29, 1956, the plaintiff ceased operating with Mulkern under the consignment system and made one last delivery to him.

The plaintiff's assistant credit manager, one Grant, spoke to Mulkern and demanded payment for the gasoline and oil delivered that day and for the dishonored check of October 22 and the protest fee. Mulkern went to Aiello and obtained a signed corporation check, blank as to date, amount and payee. In Grant's presence he completed the check for $1,180.71 (for the delivery that day and for the dishonored check plus charges). He made it payable to the Sun Oil Company, as requested by Grant. When Grant received the check, it was complete. When it appeared later that Mulkern was unable to reimburse the defendant, Aiello caused payment on the check to be stopped.

At the time of the instant transaction G. L. c. 107 (the negotiable instruments law) was the applicable statute. The defendant, as an accommodation party, was liable

under § 52 of c. 107[1] to a holder in due course despite the holder's knowledge at the time of his taking the instrument that the maker was only an accommodation party. See *Neal* v. *Wilson*, 213 Mass. 336, 337; *Stoughton Trust Co.* v. *Pike*, 282 Mass. 39, 41. It is clear that the plaintiff was a holder in due course. See G. L. c. 107, § 75.[2] A payee may be a holder in due course, *Leonard* v. *Woodward*, 305 Mass. 332, 334–335, *Johnson* v. *Favazza*, 325 Mass. 627, 629; and this is so even though the instrument was incomplete when signed by the maker. *Russell* v. *Bond & Goodwin Inc.* 276 Mass. 458, 463. Here the instrument was complete when delivered by Mulkern to Grant. The fact that it was completed in his presence is unimportant. Mulkern had actual authority to complete the instrument, as Aiello himself testified. And see G. L. c. 107, § 36.[3]

The only substantial issue is whether the delivery of the check was an ultra vires act for which the defendant corporation cannot be held. It has been said that "[o]ur cases . . . make a distinction between the exercise by a corporation of powers manifestly outside the general authority granted by its charter, and the exercise of powers which, although of the sort which in general the corporation possesses, have been abused in the particular case. In the latter case if the abuse of corporate authority is unknown to the party dealing with the corporation the defence of ultra vires is not available." *Wiley & Foss, Inc.* v. *Saxony Theatres, Inc.* 335 Mass. 257, 261. The giving of accommodation paper may be within the express chartered powers of a trading corporation, *Bennett* v. *Corporation Fin. Co. Inc.* 258 Mass. 306, or reasonably related to the purposes for which the business was incorporated. *American Sur. Co.* v. *14 Canal St. Inc.* 276 Mass. 119, 125. *Wasserman* v. *National Gypsum Co.* 335 Mass. 240. Whether the defendant's acts were within its corporate purposes was a question of

---

[1] See now G. L. c. 106, § 3–415 (1), (2) (Uniform Commercial Code, St. 1957, c. 765).

[2] See now G. L. c. 106, § 3–302.

[3] See now G. L. c. 106, § 3–112 (1) and § 3–407 (3).

fact. In the instant case the judge impliedly found that the practice was not ultra vires. We are not disposed to upset that finding. The reported evidence on the point is meager, and while it may be that the issuance of accommodation paper was beyond the corporate power of this defendant, we cannot assume such to be a fact from the mere assertion that it was engaged in the "used car" business. What evidence there was indicated that relations between the defendant and Mulkern were on a commercial as well as a friendly basis. Mulkern testified that he would recommend business to the defendant; that the defendant was permitted to park some of its automobiles at Mulkern's station; that Mulkern "sold gas to the defendant at a discount and that the defendant owed him about seventy . . . dollars." On the present record we cannot say that the act was "manifestly outside" the defendant's powers.

There is no allegation that the defendant was insolvent or threatened with insolvency at the time, or that the rights of creditors were affected. See *Bird* v. *Daggett*, 97 Mass. 494; *Monument Natl. Bank* v. *Globe Works*, 101 Mass. 57; *Merchants' Natl. Bank* v. *Citizens' Gas Light Co. of Quincy*, 159 Mass. 505, 506; *American Sur. Co.* v. *14 Canal St. Inc.* 276 Mass. 119, 125; *Wasserman* v. *National Gypsum Co.* 335 Mass. 240.

*Order dismissing report affirmed.*