Jodrey, J.
This is an action in contract in which the plaintiff-sellers seek recovery of an $11,490.00 deposit paid by the defendant-buyer pursuant to an agreement for the purchase and sale of real estate. The defendant counterclaimed for the return of an initial $1,000.00 deposit.
The facts are not in dispute and may be summarized as follows: On November 17,1982, the plaintiff-sellers accepted the defendant-buyer’s offer to purchase certain land and buildings in Wayland, Massachusetts for the sum of $124,200.00. The defendant paid a $1,000.00 binder in conjunction with his offer to purchase. On November 29, 1982, the parties executed a formal purchase and sale agreement, and the defendant gave the plaintiffs’ agent a personal check in the sum of $11,490.00 as an additional deposit.
The parties’ agreement contained a “pest inspection” clause which required the plaintiff-sellers to disclose to the buyer by December 6,1982 the nature of termite damage previously treated by a termite control company. The information relayed to the defendant on December 6, 1982 caused him sufficient concern to place a stop-payment order on his November 29, 1982 deposit check of $11,490.00. The parties agree that the defendant’s act of stopping payment was done in good faith, but without objective justification. Pest infestation is not per se an issue in this case.
Between December 6 and 14,1982, the parties were in contact concerning the termite question. Neither party took any formal or informal steps to terminate the parties’ agreement during this eight day period.
The parties’ purchase and sale agreement also contained a financing contingency clause which provided for the buyer’s termination of the agreement by written notice to the sellers on or before December 14,1982 in the event that the buyer was unable to obtain a firm mortgage commitment. The defendant-buyer had in fact applied for financing on November 17,1982 to the Eastern Mortgage Corporation which in turn placed an order for a property appraisal with John T. Curran Associates (“Curran”) on November 19, 1982. Curran was delayed in its inspection of the property by the sellers’ agent and did not finally produce the required appraisal until December 15, 1982. The defendant had by then timely terminated the parties’ agreement on December 14,1982 pursuant to the financing contingency clause. Such clause provided for the sellers' return of all deposits to the buyer upon the buyer’s termination. The plaintiff-sellers’ refusal to refund the defendant’s initial *40 deposit of $1,000.00 resulted in the defendant’s counterclaim in this action.
The trial justice found, inter alia, that:
The position of the plaintiff is that the stop payment order of December 6,1982 is a breach of the agreement and that the plaintiff, under the ‘liquidated damage’ clause is entitled to the deposit of $11,490.00.
The position of the defendant is that the stop payment was not a substantial breach and he is entitled to the $1,000.00 deposit in the hands of the plaintiffs’ agent as he terminated the agreement because he was unable to obtain a firm mortgage commitment.
I find that the stop payment order of December 6,1982 was not a substantial breach of the agreement. The parties intended that the agreement was still in force between December 6 and December 14, 1982, until the defendant terminated said agreement for failure to obtain a firm mortgage commitment.
Judgment was entered for the defendant on both the plaintiffs’ complaint and defendant’s counterclaim for $1,000.00.
1. The concept of a “substantial” breach of contract, as employed by the parties and trial justice herein, signifies a breach "going to the root of the contract.. . so serious and so far connected with the substance or consideration of the contract as to justify the [plaintiffs] in refusing to be further bound by it.” Hughes v. Rendle Corp., 271 Mass. 208, 212 (1930) and cases cited. See also, Center Garment Co. v. United Refrigerator Co., 369 Mass. 633, 638(1976). The first issue framed for review in the instant report is whether the defendant’s stop-payment order on his check for a deposit of $11,490.00 constituted a substantial breach of the parties’ agreement entitling the plaintiff-sellers to retain the initial, $1,000.00 deposit and to secure damages herein in the sum of $11,490.00.[2]
The defendant properly contends that the essence of an agreement for the purchase and sale of realty is the seller’s promise to convey title given in exchange for the buyer’s promise to pay the purchase price. See Limpus v. Armstrong, 3 Mass. App. Ct. 19, 22 (1975). This argument, however valid, obscures the significance of a deposit which serves as a binder for the parties’ agreement insuring further performance, affording the buyer exclusive rights of purchase and compensating the seller, in the event of ultimate breach, for removing the property from the market. Under appropriate circumstances, a case could easily arise wherein a stop-payment order on a buyer’s deposit check could signify a buyer’s unwillingness to proceed with the transaction and could constitute a substantial breach of the parties’ purchase and sale agreement. Whether the defendant’s stop-payment order was a substantial breach herein is a moot issue, however, in view of the parties’ conduct subsequent to December 6, 1982. “Waiver of breach is an established concept... in contract law generally,” Steranko v. Inforex, Inc., 5 Mass. App. Ct. 253, 263 (1977); Petrangelo v. Pollard, 356 Mass. 696, 701 (1970); Providence Washington Ins. Co. v. Beck, 356 Mass. 739, 740 (1970), and even a substantial or material breach may be waived. PasTeur, Inc. v. Energy Sciences, Inc., 11 Mass. App. Ct. 967, 968-969 (1971). The parties apparently concur, and the trial justice so found, that no definitive action was taken by the *41 plaintiff-sellers in response to the stop-payment order to rescind or to signal in any way that they deemed the buyer to be in default. The parties continued to negotiate the termite problem and to manifest that they deemed the transaction to be viable. Waiver of breach is an issue of fact, Porter v. Harrington, 262 Mass. 203, 208 (1982), and there is no reason to question the trial court’s express finding that the “parties intended that the agreement was still in force between December 6 and December 14, 1982.”
2. The plaintiffs’ second argument is that the deposit check at issue constituted an independent contract entitling the payees to the face amount in the absence of fraud, undue influence or other statutory defense. G.L. c. 106, §3-413.
The plaintiff-sellers enjoyed the status of holders in due course of the defendant’s $11,490.00 check. This is true even though the plaintiffs were the payees of the check. G.L. c.106, §3-302(2). See also, Sun Oil Co. v. Redd Auto Sales, Inc., 339 Mass. 384,387 (1959); Johnson v.Fanazza, 325 Mass. 627,629 (1950). The rights of a holder in due course are defined by G.L. c.106, §3-305 as follows:
To the extent that a holder-is a holder in due course he takes the instrument free from:
(1) all claims to it on the part of any person; and
(2) all defenses of any party to the instrument with whom the holder has not dealt. . . (emphasis supplied).
The short answer to the plaintiffs’ second argument is that they are not exempt as holders in due course pursuant to Section 3-305(2) from any defenses raised by the defendant herein because they personally dealt with the defendant. Section 3-305(2) unequivocally establishes that a holder in due course takes an instrument free of personal defenses raised by any party with -whom the holder has not dealt and, conversely, subject to any and all defenses raised by a party with whom the holder has had dealings. See Waltham Citizens Nat'l Bank v. Flett, 353 Mass. 696, 699 (1968). The express provisions of the parties’ contract entitling the defendant to terminate the agreement if he proved unable to secure a financing commitment and to recover all deposits paid to the seller clearly constitute dispositive defenses to the plaintiffs’ claim for the face amount of the deposit check at issue.
3. There being no error, the report is dismissed.

 The parties’ purchase and sale agreement entitled the plaintiff-sellers to retain all deposits as liquidated damages in the event of buyer’s breach. We note that this issue, and the second question discussed infra, were properly raised in the trial court and preserved for review by this Division by plaintiffs! requests for rulings 8 and 9.