NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

13-P-1237                                        Appeals Court

FIRST BOSTONVIEW MANAGEMENT, LLC vs.  BOSTONVIEW
CORPORATION & others.[1]


No. 13-P-1237.

Norfolk.     October 1, 2014. - August 19, 2015.

Present:  Berry, Hanlon, & Carhart, JJ.


Charity.  Corporation, Charitable corporation, Religious, Sale
     of assets, Officers and agents, Board of directors.  Sale,
     Of corporate property, Real estate.  Contract, Sale of real
     estate, Ratification.  Real Property, Purchase and sale
     agreement.  Agency, Ratification.



     Civil action commenced in the Superior Court Department on
November 13, 2009.

     The case was heard by Kenneth J. Fishman, J., on a motion
for summary judgment, and a separate and final judgment was
ordered by him.


     David B. Summer (Elliot M. Sherman with him) for the
plaintiff.
     Carole C. Cooke (Nicholas B. Carter with her) for
Bostonview Corporation.

---

[1] Thomas J. Kennedy, individually and doing business as JMJ
Nominee Trust, and Edward J. MacKenzie, Jr., individually and as
trustee of and doing business as Courmac Realty Trust.

BERRY, J.  The plaintiff, First Bostonview Management, LLC (First Bostonview), appeals from the judgment entered pursuant to Mass.R.Civ.P. 54(b), 365 Mass. 821 (1974), after the allowance of the summary judgment motion by the defendant, Bostonview Corporation (Bostonview), a charitable corporation, on First Bostonview's claims stemming from its attempt to purchase substantially all of Bostonview's real property.  We affirm the judgment.

As is further discussed herein in more particularized detail, the corporate board of directors of a charity and the powers of corporate officers in a charitable organization, such as Bostonview, are subject to strict fiduciary standards in the conduct of the charity's business affairs.  The Supreme Judicial Court has made clear that only specific authorization can bind a charitable corporation to an "extraordinary transaction" entered into by its corporate officers, and that authority to enter into a contract which would divest the charitable corporation "of the very essence" of its existence lies beyond the power of the charitable corporate board to delegate to corporate officers. Boston Athletic Assn. v. International Marathons, Inc., 392 Mass. 356, 364-367 (1984).

In this case, the sale of substantially all of the Bostonview church property (consisting of a church sanctuary, a parish meeting hall, a large apartment complex, offices, and

parking spaces on prime land on Beacon Hill near the Massachusetts State House) was indisputably an "extraordinary transaction," and, if completed to the end would have stripped Bostonview of the very essence of its existence as a charitable corporation, organized "exclusively for religious, charitable, scientific and education purposes" subject to the holding of the church property and the collection of income from that property for the church. We conclude that the authority to make such a divesting asset/property sale contract in the case of Bostonview was beyond the power of the charitable corporate board to delegate to two of its officers. The contract was void. The "shady" nature of the underlying prenegotiations to sell the church's very valuable (but sole) asset for $30 million -- including combined cash payments of close to $100,000 to two of the executive officers, and the purchase of the $94,000 luxury car for the church secretary -- only serves to demonstrate why restrictions on "extraordinary transactions" must be closely scrutinized by the charity's corporate board. Otherwise intemperate wrongful delegations and improper business deals may result, as here threatening the existence of the charity.

Background. We take the undisputed facts from the Superior Court judge's August 15, 2012, Memorandum of Decision and Order on Defendant Bostonview Corporation's Motion for Summary Judgment, which we supplement from the record, as noted. First

Bostonview is a Massachusetts limited liability company managed by Michael Perry, a real estate developer with over forty years of experience.  Roger J. Lehrberg, a real estate attorney, acted as a signatory for First Bostonview for real estate filings.

The defendant Bostonview is a charitable corporation, incorporated in Delaware and registered in Massachusetts to do business on behalf of the Boston Society of New Jerusalem, Inc. (church).  Bostonview was organized "exclusively for religious, charitable, scientific and education purposes with the specific object of holding title to properties and collecting the income therefrom and turning over the entire amount thereof, less expenses," to the church.  The property at issue here is located at 130-140 Bowdoin Street, and includes 146 rental apartments, eighty-two parking spaces, offices, a religious sanctuary, and a parish meeting hall (church property).  A 1978 amendment to Bostonview's certificate of incorporation included provisions allowing Bostonview to "enter into, perform, and carry out contracts of any kind necessary to, or in connection with, or incidental to, the accomplishment of the purposes of the corporation," and to "acquire any property real or personal . . . necessary for the construction and operation of such project."

The defendant, Thomas J. Kennedy, served on Bostonview's board of directors from September 22, 2003, until July, 2005,

and served as its president for a time starting on September 22, 2003.  The defendant, Edward J. MacKenzie, Jr., served as the treasurer of Bostonview, also starting on September 22, 2003, and served as the director of operations as well.[2]

On April 22, 2004, a purchase and sale agreement for the church property was signed by Kennedy, as president of Bostonview, by MacKenzie, as Bostonview's treasurer, and by Lehrberg, on behalf of First Bostonview.  The agreement listed a purchase price of $30 million and acknowledged receipt of $50,000.  It also provided that the purchaser could pay the balance of $29,950,000, with a note to the seller, secured by a purchase money mortgage.  A closing was set for August 16, 2004, at the Suffolk County registry of deeds.

There is no record of the $50,000 deposit Perry claimed to have made to Bostonview.  But Perry claims that in addition to that check, he made cash payments totaling $15,000 to Kennedy and MacKenzie personally, as well as paid $94,000 to purchase a Mercedes Benz for the church secretary.  He also paid $10,000 to a trust set up for MacKenzie's daughter and $20,000 to a nominee trust set up by Kennedy.

On August 16, 2004, the date scheduled for the closing, no one from Bostonview appeared.  Kennedy and MacKenzie later told

---

[2] The dates that Kennedy and MacKenzie ceased to hold their respective offices are disputed.

Perry that the closing was delayed due to litigation, and that additional payments were needed to extend the closing.  Perry paid another $60,000 to the aforementioned trusts.

According to the plaintiff, the parties subsequently entered into an exclusive option to purchase agreement, dated January 2, 2005 (2005 option).  The document consists of a one-page letter, signed by Bostonview's then-president, John B. Burke.  The 2005 option provided an expiration date of January 2, 2008, but failed to state a purchase price, deposit amount, or the manner in which the purchaser was to exercise the option.  A few weeks later, on January 23, 2005, a one-page document, entitled Resolution by the Board of Trustees Boston Society of the New Jerusalem Inc. (2005 resolution), stated that First Bostonview was given the first option to purchase the property, for a purchase price of "30 million dollars, four apartments of the Church's choice, ten parking spaces on the top level and the space now occupied by the Church."  Although the 2005 resolution expressly provided that it was only valid with the official church seal affixed, no seal appears on the document.  The document shows the signatures of eight members of Bostonview's

board of trustees, but four of those members claimed they did not actually sign it.[3]

A second option was executed on February 19, 2008, to expire December 31, 2008 (2008 option).  It was signed by Perry and by Robert von Wolfgang, chairman of Bostonview's board of trustees, though Wolfgang denied he signed it.  The option contained a description of the property, similar to that set forth in the 2005 resolution, but did not include a purchase price or the manner in which to exercise the option.  It did provide that "[t]his agreement supersedes all other agreements." Perry claims that he and his business partner wrote checks to Bostonview totaling $30,000 toward the 2008 option.

First Bostonview brought this action to recover for breach of the purchase and sale agreement.  The complaint included additional counts for breach of an indemnification agreement, damages for money loaned and for money had and received, misrepresentation, civil conspiracy, and violation of G. L. c. 93A.  Kennedy and MacKenzie were also named as defendants.[4]

---

[3] The summary judgment record contains affidavits from four of the members, asserting that they had never seen or signed the resolution.  The affidavits were unopposed.

[4] MacKenzie and other codefendants were also the subject of Federal indictment concerning misadministration of the affairs of the church.  In the indictment, MacKenzie was charged by a Federal grand jury in several counts with engaging in "a pattern of fraudulent acts," in order to "defraud the Church of its considerable financial holdings and profit from transactions

The judge allowed Bostonview's motion for summary judgment, ruling that the purchase and sale agreement was not enforceable because the corporate officers lacked authority to bind Bostonview.  Bostonview's motion for entry of final and separate judgment was allowed, and First Bostonview appealed.

Discussion.  1.  Actual authority.  To begin, the plaintiff argues that Kennedy and MacKenzie had actual authority to enter into the purchase and sale agreement by virtue of their respective corporate offices and the Bostonview corporate by-laws, which allowed the president to execute certain mortgages and other contracts.[5]  We disagree.  It is well established that

---

involving the Church."  On October, 23, 2014, MacKenzie pleaded guilty to the Federal charges.  By his guilty pleas, MacKenzie was convicted of a series of Federal criminal offenses, including but not limited to racketeering conspiracy, racketeering, mail fraud, and money laundering.  The predicate racketeering acts to defraud the church in the Federal criminal case were in addition to the subject asset sale transaction which is the subject of this appeal, and which was not incorporated in the Federal criminal indictment.  This particular purported transaction to sell the church's sole asset -- all as further described in this opinion -- is, for the reasons stated herein, voided under Massachusetts law as in breach of fiduciary obligations.  See United States vs. MacKenzie, U.S. Dist. Ct., No. 13-cr-10149 (D. Mass. May 21, 2013).  Also of note, Kennedy, after waving indictment, pleaded to criminal information charging mail fraud conspiracy and several counts of filing false individual tax returns.  See United States vs. Kennedy, U.S. Dist. Ct., No. 13-cr-10065 (D. Mass. Mar. 13, 2013).

[5] The plaintiff relies on the following:  "[The president] shall execute bonds, mortgages and other contracts requiring a seal, under the seal of the corporation, except where required or permitted by law to be otherwise signed and executed and

corporate officers do not have authority to sell the principle asset of a corporation without specific authorization from its board of directors.  See Stoneman v. Fox, Film Corp., 295 Mass. 419, 425 (1936); Boston Athletic Assn. v. International Marathons, Inc., 392 Mass. at 365; Kanavos v. Hancock Bank & Trust Co., 14 Mass. App. Ct. 326, 333 (1982).

Moreover, because Bostonview is a charitable corporation, the powers of its corporate officers are more strictly construed.  See Boston Athletic Assn. v. International Marathons, Inc., 392 Mass. at 366.  To that end, the Supreme Judicial Court has made clear that only specific authorization can bind a charitable corporation to an extraordinary transaction entered into by its corporate officers.  Id. at 364-365.  The court, in fact, went further, holding that authority to make a contract that divested the charitable corporation "of the very essence" of its existence, in that case the exclusive right to promote the Boston Marathon, was beyond the power of the board to delegate to its president.  Id. at 366-367.

Here, in our view, the sale of substantially all of the church property can only be characterized as an extraordinary transaction, and, indeed, one that would divest Bostonview of the very essence of its existence as a charitable corporation.

_____

except where the signing and execution thereof shall be expressly delegated by the board of directors to some other officer or agent of the corporation."

Bostonview was formed "exclusively for religious, charitable, scientific and education purposes" and to hold the church property and collect its income for the church. We believe the authority to make such a contract was beyond the power of the board of trustees to delegate to Kennedy and MacKenzie. See ibid. At the very least, if such power could be delegated at all, the corporate officers required specific authorization from the board of trustees to bind Bostonview to the purchase and sale agreement, and no such authority was conferred here. See, e.g., Bisceglia v. Bernadine Sisters of the Third Order of St. Francis of Mass., Inc., 29 Mass. App. Ct. 959, 960-961 (1990) (treasurer's authority "most certainly does not extend to agreements to dispose of real estate owned by the corporation, whose principal activity was the pursuit of its religious purposes").

The plaintiff counters that the cases relied upon by the judge, requiring specific authorization, involved only one corporate officer. Because both the president and the treasurer of Bostonview signed the purchase and sale agreement here, the plaintiff posits that the requirement of specific authorization does not apply to these facts. We note, however, that in Peoples Natl. Bank of Boston v. New England Home for Deaf Mutes, Aged, Blind & Infirm, 209 Mass. 48, 49-50 (1911), cited in Boston Athletic Assn. v. International Marathons, Inc., 392

Mass. at 366, the court held unenforceable, for lack of authority, a promissory note signed by both the president and treasurer on behalf of a charitable corporation.[6] In a transaction involving the transfer of a major asset of a charitable corporation, specific authorization from the board of directors is required, regardless of the number of corporate officers involved.

2. Apparent authority. Even if they were without actual authority, the plaintiff maintains that Kennedy and MacKenzie had apparent authority to sign the purchase and sale agreement on Bostonview's behalf. The judge correctly ruled that the doctrine of apparent authority has no application in this context.

Apparent authority is "created as to a third person by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him." Theos & Sons, Inc. v. Mack Trucks, Inc., 431 Mass. 736, 745 (2000). In the case of a charitable corporation, however, apparent authority

---

[6] The plaintiff's argument on appeal, concerning enforcement of the purchase and sale agreement under G. L. c. 156D, § 8.46, fails, if for no other reason than that the agreement lacked the statutorily required acknowledgement to constitute a recordable instrument. See G. L. c. 183, § 30; Bisceglia v. Bernadine Sisters of the Third Order of St. Francis of Mass., Inc., supra at 961.

cannot be relied upon to enforce an agreement that transfers the charity's primary asset or principal function. See <u>Boston Athletic Assn</u>. v. <u>International Marathons, Inc</u>., 392 Mass. at 367; <u>Bisceglia</u> v. <u>Bernadine Sisters of the Third Order of St. Francis of Mass., Inc</u>., <u>supra</u> at 960-961. Furthermore, as here, "[w]here the sale of corporate real estate is 'outside the scope of . . . [the corporation's] usual activity,' the doctrine of apparent authority does not apply." <u>Id</u>., at 961, quoting from <u>Kanavos</u> v. <u>Hancock Bank & Trust Co</u>., 14 Mass. App. Ct. at 333.

3. <u>Ratification</u>. The plaintiff additionally argues that the apparent authority of Bostonview's corporate officers was established by the actions of Bostonview's board of trustees after the purchase and sale agreement was executed. The plaintiff points to cases holding that even in the absence of actual authority, the corporation may be bound if it later ratified the transaction. See, e.g., <u>Bloomberg</u> v. <u>Greylock Bdcst. Co</u>., 342 Mass. 542, 548 (1961) (corporate president's authority to sell major asset of corporation must be shown either by express delegation of such authority or that a majority of directors knew of the sale and approved or ratified it); <u>Boice-Perrine Co</u>. v. <u>Kelley</u>, 243 Mass. 327, 330-331 (1923).

To clarify, ratification is not apparent authority. Ratification, which may be established by the principal's subsequent acquiescence or approval of, or failure to repudiate,

a transaction conducted by it agent, "relates back, and has the same effect, as a prior grant of authority by the principal to the agent."  Linkage Corp. v. Trustees of Boston Univ., 425 Mass. 1, 18 (1997).  Nevertheless, in a transaction involving the transfer of a major asset of a charitable corporation, the requirement of specific authorization is presumed, and the burden is on the purchaser to inquire as to the authority conferred before entering into the transaction.  Bisceglia v. Bernadine Sisters of the Third Order of St. Francis of Mass., Inc., 29 Mass. App. Ct. at 960.  "Persons dealing with a corporation are presumed to know the extent of its powers." Boston Athletic Assn. v. International Marathons, Inc., 392 Mass. at 367, quoting from Wiley & Foss, Inc. v. Saxony Theatres, Inc., 335 Mass. 257, 260-261 (1957).

It is true that the above cases, cited by the plaintiff, identified ratification as an alternative to actual authority. Nevertheless, that aspect of the analysis has not been adopted in subsequent cases involving charitable corporations.  See, e.g., Boston Athletic Assn. v. International Marathons, Inc., 392 Mass. at 364-366; Bisceglia v. Bernadine Sisters of the Third Order of St. Francis of Mass., Inc., 29 Mass. App. Ct. at 960-961.  Because of the heightened public interest involved in the disposition of charitable assets, officers of a charitable corporation must have specific authorization to bind the charity

to an extraordinary transaction.  Boston Athletic Assn. v.
Industrial Marathons, Inc., 392 Mass. at 364-365.  "Those
entrusted with the management of funds dedicated to charitable
purposes and donated out of a sense of social or moral
responsibility owe an especially high degree of accountability
to the individual donors as well as to the community."  Id. at
366.  We therefore conclude that subsequent approval or other
conduct by the board of directors of a charitable corporation
will not substitute for prior specific authorization to commit
the charity to an extraordinary transaction.

     For that reason, we reject the plaintiff's assertion that
Bostonview's board of trustee's failure to repudiate the
purchase and sale agreement, when the transaction came to light
in 2008 in litigation involving the church, should be treated as
proof of authorization.  We reject, as well, the plaintiff's
reliance on the 2005 resolution as reaffirming the plaintiff's
right to purchase the church property.  Even assuming its
authenticity, the 2005 resolution was executed three weeks after
the 2005 option to purchase and nine months after the purchase
and sale agreement.[7]  Contrary to the plaintiff's position, the

_____

     [7] Moreover, the 2005 resolution contained different terms
than the 2005 option and, like the option itself, made no
reference whatsoever to the purchase and sale agreement.  It
also lacked the official church seal, without which it was not
valid as provided therein.  We add here that, to the extent the
plaintiff seeks to enforce the 2005 and 2008 options -- its

evidence of subsequent conduct by the board of trustees did not create a question of fact regarding the authority of Bostonview's corporate officers to sell the church property.

4. <u>Separate and final judgment</u>. The plaintiff argues that the judge's allowance of Bostonview's motion for entry of separate and final judgment, whereby the judge dismissed the plaintiff's remaining claims, was error. We touch briefly on the dismissal of those claims, which we determine was not error.

The plaintiff sought damages for breach of an indemnification agreement, dated September 17, 2008, between Perry and Bostonview, signed by Rex Ellis, as president and chairman of the board of trustees of Bostonview. The plaintiff's one-paragraph argument in its brief on appeal does establish that Ellis had authority to bind Bostonview to an agreement to pay up to $475,000 to indemnify Perry for amounts he had paid to MacKenzie towards the purchase of the church property. As previously explained, the power of an officer of a charitable corporation to enter into a transaction that falls outside the general managerial functions of the charity is narrowly construed. <u>Boston Athletic Assn</u>. v, <u>International Marathons, Inc</u>., 392 Mass. at 364-366. And Perry, as the party

_____

brief does not make that clear -- the judge properly dismissed the claims, as both documents lacked essential terms, even apart from the issue of authorization. See, e.g., <u>Lewis</u> v. <u>Chase</u>, 23 Mass. App. Ct. 673, 676 (1987) (option agreements are "to be strictly construed").

dealing with a charitable corporation, was bound to inquire as to the extent of Ellis's authority. See id. at 367. Instead, the record indicates that Perry was aware that the church had filed a lawsuit against Ellis claiming that he had illegally gained control of the church, as Perry signed an affidavit in connection with the litigation on September 18, 2008, the day after Ellis executed the indemnification agreement in Perry's favor.

The plaintiff's claims for civil conspiracy and violation of G. L. c. 93A, were properly dismissed, based on the judge's ruling regarding the lack of actual or apparent authority of Bostonview's corporate officers to transfer the church property, as the judge correctly determined that Kennedy and MacKenzie were not acting on Bostonview's behalf or in concert with Bostonview in signing the purchase and sale agreement.

We do not reach the plaintiff's following claims. The plaintiff devotes two sentences in its brief to its claim for monies loaned and monies had and received; as that does not constitute appropriate appellate argument, the issue is deemed waived. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975); Morgan v. Laboratory Corp. of Am., 65 Mass. App. Ct. 816, 821 n.6 (2006). The plaintiff's claim against Bostonview for misrepresentation, regarding the status of Kennedy and MacKenzie as corporate officers when they were negotiating the

sale, was not set out in its complaint and may not be raised here.  See <u>Flynn</u> v. <u>Boston</u>, 59 Mass. App. Ct. 490, 495 (2003).

<u>Judgment affirmed</u>.