NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-462

K. WILLIAM KRIKORIAN & another[1]

vs.

HARNESS HORSEMEN'S ASSOCIATION OF NEW ENGLAND, INC.[2]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiffs, K. William Krikorian and William Abdelnour (collectively, plaintiffs), appeal from a judgment on a directed verdict in favor of the defendant, Harness Horsemen's Association of New England, Inc. (HHANE), on breach of contract and fraud claims.  HHANE filed a cross appeal from the denial of its motion for fees and costs pursuant to G. L. c. 231, § 6F, but conceded at oral argument that we lack jurisdiction over

---

[1] William Abdelnour.

[2] We spell the defendant's name as in the caption of the complaint, although its corporate documents including its bylaws use the word "Horseman's," not "Horsemen's."

that appeal.  We affirm the judgment as to the directed verdict on the plaintiffs' claims, and we dismiss HHANE's cross appeal.

Background.  We summarize the evidence presented at trial in the light most favorable to the plaintiffs.  See O'Brien v. Pearson, 449 Mass. 377, 383 (2007).

HHANE is a nonprofit corporation that offers membership to individuals who are involved in harness horse racing at the Plainridge Park Casino (Plainridge), which is a harness racing track and slot machine parlor in Plainville.  HHANE provides benefits to its members, including by promoting harness racing through legislative advocacy and negotiating contracts on behalf of its members with Plainridge.  Pursuant to HHANE's bylaws, a board of directors (board) manages HHANE.  The bylaws set forth basic membership requirements, including that each year a member must submit a written application for membership and pay annual dues.

HHANE annual membership spans the calendar year. Customarily, HHANE provides a grace period for membership renewal from January 1 to May 31 of the year following membership expiration.  During the grace period, individuals remain members in good standing, but their benefits do not cover the new racing season.  To retain benefits throughout the new year, individuals must renew their memberships by May 31.

Both plaintiffs were HHANE members for many years, including between 2013 and 2017, and previously served on HHANE's board.  Each of them last served as a director in 2016.

In 2018, HHANE adopted a retirement savings plan (plan) for its members.[3]  The plan set forth eligibility requirements, including that to participate in the plan an individual must be a HHANE member in good standing.  For individuals who were members in good standing as of May 31, 2018, the plan also provided a one-time benefit by retroactively allocating funds for their previous racing activity between 2013 and 2017 (five-year look-back provision).  In April 2018, HHANE informed the plaintiffs that they needed to renew their memberships by May 31 to obtain allocations under the five-year look-back provision; otherwise, they would forfeit those allocations.

During early 2018, both plaintiffs were dissatisfied with the HHANE board's failure to convince Plainridge to allow HHANE members to stable horses there before the racing season began. As a result, when each plaintiff submitted his 2018 membership application and annual dues in advance of the May 31 deadline, he crossed out the following language on the application form:

---

[3] Apparently HHANE adopted the plan to avail of funds that the Legislature had directed the Massachusetts Gaming Commission to allocate for retirement benefits for members of horsemen's organizations.  See G. L. c. 23K, § 60 (c) (iii).

3

"HHANE is my sole authorized representative for contract negotiations with PGR (Plainville Gaming and Redevelopment LLC).  With this appointment I hereby revoke any and all authorities given by me for similar purposes."[4]

HHANE's executive director, Carol Malcolm, rejected the plaintiffs' applications.  In discussing with each plaintiff his objection to the language he had deleted from the application form, Malcolm explained that HHANE did not accept "partial" memberships and that membership was contingent on agreement to the language.  She also reminded each plaintiff that to be eligible for the plan, he had to renew his membership by May 31.  During a May 16 meeting, Malcolm told the board that she had rejected the plaintiffs' applications.  The plaintiffs did not submit unaltered application forms and were not members for the 2018 membership year.[5]  As a result, HHANE did not allocate funds for the plaintiffs under the five-year look-back provision.[6]

---

[4] On the 2018 application, each plaintiff also crossed out language pertaining to HHANE's use of the plaintiff's name, image, and likeness, but that language is not at issue here.

[5] In 2019, each plaintiff signed the unaltered application form, resumed HHANE membership, and became a participant in the plan.

[6] At trial, the judge precluded Krikorian from testifying about his calculations of the amount that HHANE would have allocated to him under the five-year look-back provision if he had been a member in good standing as of May 31, 2018.  The trial judge ruled that expert testimony was necessary on the issue of damages, reminding plaintiffs' counsel that at the final pretrial conference she had alerted the parties to the issue.  The plaintiffs do not raise the evidentiary ruling on appeal, and so we do not consider it.

4

In 2022, the plaintiffs sued HHANE in Superior Court, alleging breach of contract, fraud, and violation of G. L. c. 93A. HHANE counterclaimed for abuse of process. HHANE also filed a motion to dismiss the complaint, which a judge (motion judge) denied. Before a different judge (trial judge), the action proceeded to a jury trial on the plaintiffs' contract and fraud claims. At the close of the plaintiffs' case, HHANE moved for a directed verdict pursuant to Mass. R. Civ. P. 50 (a), 365 Mass. 814 (1974), which the trial judge allowed. Judgment entered on March 10, 2023.[7]

HHANE subsequently moved for attorney's fees, costs, and interest pursuant to G. L. c. 231, § 6F, arguing that the plaintiffs' claims were frivolous. On September 29, 2023, the trial judge denied that motion. HHANE then moved to dismiss with prejudice its own counterclaim for abuse of process, which was allowed. A final judgment of dismissal entered on February 6, 2024.

On March 6, 2024, the plaintiffs filed a notice of appeal from the judgment on the directed verdict that had entered on

---

[7] As a consequence of the directed verdict, the trial judge dismissed the G L. c. 93A claim, which had been bifurcated. No issue is before us with respect to that claim.

March 10, 2023.[8]  HHANE filed a notice of appeal from the denial of its motion for fees and costs.

Discussion.  1.  Plaintiffs' appeal.  The plaintiffs argue that the trial judge erred in directing a verdict for HHANE on their breach of contract and fraud claims.  We review de novo a ruling on a directed verdict, construing the evidence in the light most favorable to the plaintiffs and disregarding that favorable to HHANE.  See O'Brien, 449 Mass. at 383.

a.  Breach of contract.  The plaintiffs argue that HHANE's rejection of their 2018 membership applications amounted to a breach of contract.  To survive a motion for directed verdict, the plaintiffs had to establish that "there was an agreement between the parties; the agreement was supported by consideration; the [plaintiffs were] ready, willing, and able to perform [their] part of the contract; the defendant committed a breach of the contract; and the plaintiff[s] suffered harm as a result" (citation omitted).  Bulwer v. Mount Auburn Hosp., 473 Mass. 672, 690 (2016).  We conclude that the trial judge

_____

[8] HHANE filed a motion to strike as untimely the plaintiffs' notice of appeal.  After a hearing (the transcript of which is not in the record before us), the motion judge denied that motion.  HHANE did not appeal from that ruling.  We assume, without deciding, that the plaintiffs' notice of appeal was timely.

6

properly directed a verdict for HHANE because the plaintiffs did not establish a contract, a breach, or damages.

The plaintiffs do not argue that the contract at issue was their HHANE membership for the 2017 year.  From the record before us, it appears that the contract each plaintiff had with HHANE for 2017 was fulfilled.[9]  Rather, the plaintiffs argue that HHANE's bylaws constituted a contract that entitled each of them to ongoing membership, including for the 2018 membership year.  We are not persuaded.

"The bylaws of a [nonprofit] corporation form a contract between the [nonprofit] and its members, and are interpreted according to principles of contract law."  General Convention of the New Jerusalem in the United States of Am., Inc. v. MacKenzie, 449 Mass. 832, 835 (2007).  Assuming that the bylaws constituted a contract between HHANE and each plaintiff while he was a member, the plaintiffs have not shown either that the contract formed by the bylaws remained binding after the plaintiffs' memberships lapsed on May 31, 2018, or that HHANE breached it by refusing to renew the plaintiffs' memberships.

Viewing the evidence in the light most favorable to the plaintiffs, see O'Brien, 449 Mass. at 383, we accept the

---

[9] On the 2017 membership application, each plaintiff had agreed to the language he deleted from the 2018 application.

plaintiffs' assertion that they were members of HHANE until May 31, 2018, the end of the grace period after their 2017 memberships expired. We do not, however, agree with the plaintiffs' argument that the bylaws permitted each plaintiff to renew his membership for 2018 by simply submitting an altered application form and dues. The bylaws set forth broad powers accorded to the HHANE board, including to manage "[t]he affairs of the corporation" and "exercise all the power of the corporation." The bylaws set forth basic parameters for membership applications, but nothing in the bylaws precluded HHANE from imposing additional requirements for membership (e.g., by setting dues or changing language of the application form).

HHANE's 2018 membership application form was essentially an offer, and the plaintiffs' altered application forms were counteroffers; HHANE's rejection of the plaintiffs' counteroffers meant that neither plaintiff entered into a binding contract with HHANE for the 2018 membership year. See Sea Breeze Estates, LLC v. Jarema, 94 Mass. App. Ct. 210, 215-216 (2018). See also I & R Mechanical, Inc. v. Hazelton Mfg. Co., 62 Mass. App. Ct. 452, 455 (2004).

Nor did the plaintiffs prove that HHANE breached any contract by rejecting the plaintiffs' altered 2018 applications. Nothing in the bylaws required HHANE to conduct a vote before

8

rejecting the plaintiffs' altered applications. HHANE's permitting Malcolm, its executive director, to reject the plaintiffs' applications on its behalf did not breach the bylaws. Malcolm discussed with each plaintiff his 2018 application form and the importance of submitting an unaltered version of it before the May 31 deadline, showing she had at least apparent authority to bind HHANE. See First Bostonview Mgt., LLC v. Bostonview Corp., 88 Mass. App. Ct. 89, 95 (2015) (apparent authority created by conduct of agent which reasonably causes third person to believe principal consents to action of agent). Moreover, on May 16 when Malcolm told the board of her rejection of the plaintiffs' altered applications, the board effectively ratified her decision. See id. at 96.

As for the plaintiffs' contention that HHANE breached the bylaws by inserting the complained-of language into the 2018 application form without prior approval from the board, it is unavailing. Each plaintiff testified that the language he crossed out was never approved by the board, but because each plaintiff left the board in 2016, neither had personal knowledge as to whether the board had (or had not) approved the language at some point between 2016 and 2018. The plaintiffs' testimony, therefore, was not based on personal knowledge and did not save their contract claim from a directed verdict. See Tafralian v. Metropolitan Life Ins. Co., 316 Mass. 429, 430 (1944) (directed

9

verdict should have been granted where sole evidence supporting claim was testimony lacking personal knowledge).  Cf. Madsen v. Erwin, 395 Mass. 715, 721 (1985) ("Conclusory statements, general denials, and factual allegations not based on personal knowledge [are] insufficient to avoid summary judgment").  In any event, even assuming that the complained-of language was inserted into the HHANE application form without approval of the board, at the May 16 meeting the board effectively approved that language when it accepted Malcolm's decision that the plaintiffs could not be members for the 2018 year unless they agreed to it.

The plaintiffs also failed to prove damages.  Though the trial judge had alerted them that they would need expert testimony to prove how HHANE would have allocated the funds among all of its members if the plaintiffs had been members as of May 31, 2018, see note 6, supra, the plaintiffs did not present any such testimony.  We agree with the trial judge that "there is no competent evidence of any of the purported damage that the plaintiffs have suffered."  Contrast General Dynamics Corp. v. Federal Pac. Elec. Co., 20 Mass. App. Ct. 677, 683, 687 (1985) (directed verdict motion properly denied where invoices admitted into evidence were competent evidence of contract damages).

b.  Fraud.  The plaintiffs argue that by publishing the bylaws and the plan but not adhering to their terms, HHANE

10

"engaged in fraud in so publishing these false facts."  To prove a fraud claim, the plaintiffs must "establish that the defendant[] made a false representation of material fact, with knowledge of its falsity, for the purpose of inducing the plaintiffs to act on this representation, that the plaintiffs reasonably relied on the representation as true, and that they acted upon it to their damage."  Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc., 455 Mass. 458, 471 (2009).

The plaintiffs assert that because HHANE's bylaws did not include the language they complain about in the 2018 application form, the bylaws falsely represented HHANE's membership requirements.  We find no support in the record for that assertion.  As explained above, the bylaws do not dictate all of the conditions of membership in HHANE, but only broad parameters.  Indeed, by according broad powers to the board, the bylaws permit the board and, under its direction, its executive director, to edit the terms of the HHANE application form.  Nothing in the bylaws or the plan amounted to a false statement of a material fact.  See Sullivan v. Five Acres Realty Trust, 487 Mass. 64, 75 (2021) (holding that "bare nondisclosure" did not constitute fraudulent misrepresentation).  "[HHANE] did not make representations that were intended to cause the plaintiffs to believe something that was untrue."  Id.

11

At oral argument, the plaintiffs contended that an April 26, 2018 e-mail from Malcolm, HHANE's executive director, contained a material misrepresentation because it referred to the plaintiffs as active members during the grace period that ended May 31. Even assuming that the plaintiffs' membership status during the grace period was ambiguous, the e-mail made clear that "[n]ew membership must be applied for and paid by May 31, 2018." Thus any ambiguity about the grace period was immaterial to the plaintiffs' membership status after May 31. See Nei v. Burley, 388 Mass. 307, 310 (1983) (upholding directed verdict at the close of plaintiffs' case because nondisclosure "fails to reach the watermark of fraud"). Further, the plaintiffs did not rely on this e-mail to their detriment. Each plaintiff testified that he knew that failure to renew his membership by May 31 would result in losing allocations under the plan's five-year look-back provision. Nonetheless, each plaintiff chose not to submit an unaltered application form. Under these circumstances, there was no error in the trial judge's allowing a directed verdict for HHANE on the plaintiffs' fraud claim. See id. at 311 (directed verdict for defendant on fraud claim, where plaintiffs did not prove reliance).

2. Cross appeal. At oral argument, counsel for HHANE acknowledged that, because it did not seek review of the denial of its G. L. c. 231, § 6F motion from a single justice of this

12

court pursuant to G. L. c. 231, § 6G, we now lack jurisdiction to hear HHANE's cross appeal.  We agree.  See Holmes v. Andersen, 94 Mass. App. Ct. 472, 475-476 (2018); Vittands v. Sudduth, 49 Mass. App. Ct. 401, 412 (2000).

The judgment on the directed verdict is affirmed.  The judgment dismissing the counterclaim is affirmed.  The cross appeal is dismissed.

So ordered.

By the Court (Singh, Grant & Brennan, JJ.[10]),

Clerk

Entered:  April 9, 2025.

---

[10] The panelists are listed in order of seniority.

13